**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner,**

v.

**QUARTO MINING COMPANY; Elba F. Bellomy, Respondents.**

**No. 89–3453.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 16, 1990.

Decided April 24, 1990.

---

7. The transcript does not indicate that any of     this discussion was held at the bench.

Michael J. Denney (argued), U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for petitioner.

William M. Hanna (argued), David J. Millstone, Squire, Sanders & Dempsey, Sanford A. Meizlish, Barkan & Neff, Columbus, Ohio, for respondents.

Before MARTIN and WELLFORD, Circuit Judges; and EDWARDS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This case addresses the propriety of the administrative law judge's determination that under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.*, Quarto Mining Co. was entitled to transfer its liability for the reopened claim of Elba F. Bellomy to the Black Lung Disability Trust Fund.

Elba F. Bellomy was employed as a miner in the coal fields of West Virginia and Ohio. He filed a claim for black lung benefits with the Social Security Administration on December 16, 1970. That claim was denied on January 23, 1971. On September 11, 1972, he filed a second black lung benefits claim with the Social Security Administration which was also denied. These claims are categorized as "Part B" claims under the Black Lung Benefits Act because they were filed on or before July 1, 1973.

On April 16, 1979, Bellomy filed a third claim for black lung benefits with the Department of Labor. This claim is categorized as a "Part C" claim under the Black Lung Benefits Act because it was filed after December 31, 1973. The Department of Labor issued a Notice of Initial Finding on February 8, 1980, which awarded benefits to Bellomy. Bellomy's injury for the purposes of this claim occurred in the State of Ohio and his employer at this time was Quarto Mining Co. Quarto Mining Co. challenged this finding, and in an Initial Determination dated September 11, 1980, the award was affirmed, with a date of entitlement of April 1, 1979.

Quarto Mining Co. requested a formal hearing on this matter before an administrative law judge. On March 15, 1984, a formal hearing regarding Elba Bellomy's benefits award was held before an administrative law judge in Morgantown, West Virginia. At this hearing, Quarto Mining moved to be dismissed from liability under the Black Lung Benefits Amendment of 1981. That amendment, codified in pertinent part at 30 U.S.C. § 932(c)(2), (j)(3), provides that liability for black lung benefits may be transferred from the employer to a trust fund administered by the Department of Labor in certain circumstances.

Bellomy joined in this motion, and the hearing thereafter considered only the issue of Quarto Mining's liability. At the hearing, Bellomy testified that he had not received any notice from the Social Security Administration regarding his right to have his previously denied claims reconsidered pursuant to 30 U.S.C. § 945.

The hearing was conducted without the presence of a representative of the Department of Labor. Consequently, on April 2, 1984, the administrative law judge issued an order granting the Director, Office of Workers' Compensation Programs, Department of Labor, twenty days in which to present evidence and argument regarding the applicability of the transfer provisions in the Black Lung Benefits Amendment of 1981. On April 10, 1984, the Director submitted an argument opposing transfer of liability but failed to offer any evidence either in support of that position or challenging Bellomy's assertion about his lack of notice. On May 19, 1984, Quarto Mining Co. filed a response brief noting the lack of any evidence by the Director which demonstrated that Bellomy received notice of his right to elect review of his previously denied claims. On May 22, 1984, the Director requested an additional twenty days to submit evidence in the form of a computer printout which listed the names of Bellomy and others and nothing more. There was no direct evidence that the card was ever mailed. When the Director was unable to carry its burden, the administrative law judge, on May 25, 1984, issued a Decision and Order.

The administrative law judge ruled that Bellomy never received an election card, therefore, "good cause" existed for his failure to respond to the election card because his failure to receive the card was due to a circumstance beyond his control or due to an unavoidable circumstance. Moreover, the fact that Bellomy filed a claim on April 6, 1979 indicated both that he was continuing to pursue his claims and that he would have filed an election had he in fact received a card. The administrative law judge then dismissed Quarto Mining Co. as the responsible operator and transferred

liability to the Black Lung Disability Trust Fund, returning the case to the Deputy Commissioner for payment.

The Director appealed the administrative law judge's decision to the Benefits Review Board. The Director contended that the administrative law judge did not have the jurisdiction to make a "good cause" determination for failure to elect review. The Board rejected the Director's argument and affirmed the administrative law judge. From that decision, the Director appealed to this Court.

The Black Lung Benefits Act provides that no operator, here, Quarto Mining Co., shall be liable for a miner's death or disability due to black lung if that death or disability was the subject of a claim denied before March 1, 1978, provided that the claim has been approved in accordance with 30 U.S.C. § 945. 30 U.S.C. § 932(c). Liability for such approved claims is instead transferred to the Black Lung Disability Trust Fund. 30 U.S.C. § 932(j)(3). The transfer provisions altered the liability for two types of denied claims which were reopened by the Black Lung Benefits Reform Act of 1977: those claims which had been filed with and denied by the Social Security Administration under Part B of the Act, and those claims which had been filed with and denied by the Department of Labor under Part C of the Act. 30 U.S.C. § 945. 30 U.S.C. § 945 provides that all claims denied prior to March 1, 1978 are eligible for reopening, but that such reopening is automatic only for Part C claims. Part B claimants, such as Bellomy, are required to request review of their claims, either with the Social Security Administration or the Department of Labor, as appropriate. 30 U.S.C. § 945(a)(1)(A), (B).

The Code of Federal Regulations provides that for Part B claims:

No claim filed with and denied by the Social Security Administration is subject to the transfer of liability provisions unless a request was made by or on behalf of the claimant for review of such denied claim under section 435. Such review must have been requested by the filing of a valid election card or other equiva-

lent document with the Social Security Administration in accordance with section 435(a) and its implementing regulations....

20 C.F.R. § 725.496(d).

The Director claims that, because Bellomy failed to elect review under the Black Lung Benefits Act, and because his claim was not subject to automatic review, Quarto Mining is not entitled to transfer its liability for Bellomy's disability to the Black Lung Disability Trust Fund. The Director argues that the Black Lung Benefits Act requires the filing of a request for review as a precondition to liability transfer for any denied Part B claim. According to the Director, the date of the election card filing is critical because it determines the date of retroactive benefits absent evidence showing the specific date of the onset of the miner's disability.

The Director contends that the administrative law judge's finding that "good cause" existed for Bellomy's failure to file an election card is not tantamount to a triggering of review under the Black Lung Benefits Act. In essence, the Director argues that an excuse for not filing an election card is not a substitute for a specific request for review. The Code of Federal Regulations provides:

A request for review by the Social Security Administration ... must be received within 6 months from the date on which the notice is mailed.... If a request for review by the Social Security Administration ... is not received by the Social Security Administration within 6 months from the date the notice is mailed, the claimant shall be considered to have waived the right of review afforded by this Subpart G unless "good cause" may be established for not responding within this time period. "Good cause" may be established in the following situations:

(1) Circumstances beyond the individual's control, such as extended illness, mental, or physical incapacity, or communication difficulties; or

(2) Incorrect or incomplete information furnished by the individual the Social Security Administration; or

(3) Unusual or unavoidable circumstances, the nature of which demonstrate

that the individual could not reasonably be expected to have been aware of the need to respond within this time period. 20 C.F.R. § 10.704(d). The Director argues that the administrative law judge has allowed a claimant to elect review by merely not having waived the right to do so. In further support of this position, the Director contends that the legislative history of the 1981 amendments to the Black Lung Benefits Act supports the argument that a specific request for review must have been made in order for liability for that claim to have been transferred from the operator to the trust fund.

In order to not be swamped with cases as we once were, our scope of review in appeals from the Benefits Review Board is narrow. The administrative law judge hears the evidence and makes the findings of fact. The Board itself on review may only set aside an administrative law judge's findings of fact and conclusions of law if they are not supported by substantial evidence in the record considered as a whole or if they are not in accordance with law. *Pyro Mining Co. v. Slaton*, 879 F.2d 187 (6th Cir.1989); 20 C.F.R. § 802.301(a). This Circuit has repeatedly ruled that we must affirm the Board's decision if the Board has not committed any legal errors or exceeded its statutory scope of review of the administrative law judge's factual determinations. *See, e.g., Pyro Mining Co. v. Slaton, supra.*

The only issue presented by the Director in its appeal to the Board was the jurisdiction of the administrative law judge to make a "good cause" determination regarding Bellomy's failure to file an election card. In *Pyro Mining Co. v. Slaton*, we held that administrative law judges had jurisdiction to rule on the adequacy of notice given to carriers and employers in black lung cases. 879 F.2d at 189–90. Under the same rationale, we hold that administrative law judges have jurisdiction to rule on the adequacy of election notices to claimants whose disability claims have been reopened under the Black Lung Disability Benefits Act. A determination of the adequacy of election notices necessarily includes the consideration of appropriate exceptions to the filing requirement due to the failure of the Social Security Administration to provide a claimant with an election card. Thus, we agree that the Board properly affirmed the administrative law judge's ruling on the jurisdiction issue.

Although the Director's primary contention before this Court was not raised before the Board, as in our review of a district court, we may affirm the decision of the Board on grounds other than those stated by the Board. *See Old Ben Coal Co. v. Luker*, 826 F.2d 688 (7th Cir.1987) (argument made by the Director); *cf. Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985) (district court may be affirmed for reasons other than those stated by the district court). This consideration of the Director's argument does not offend the holding in *Securities Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), which precludes judicial review of administrative orders valid only as policy determinations or judgments which the agency alone can make. Here, even if the Board's appellate review activities can be construed as administrative policy-making, *see Luker*, 826 F.2d at 698, the Board was not operating in an area exclusively entrusted to an administrative agency. Moreover, we may also review the legal question raised by the Director under an exception to the general rule precluding review of issues not raised below. That exception allows appellate courts to exercise their discretion to consider matters on appeal, but then only in "exceptional cases ... [in which] injustice might otherwise result." *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *Cleland v. United States*, 874 F.2d 517, 522 n. 6, 523 (8th Cir.1989) (citing cases). Because this issue is of likely repetition and because of the potential injustice of forcing disabled miners to wait many more years for the judicial system to finally decide their claims if we do not squarely address the issue presented by the Director, we invoke this exception to the general rule that appellate courts do not review issues not presented below.

The administrative law judge and the Board confronted a novel issue regarding the effect of the absence of an election

card on the transfer of liability from the coal mine operator to the trust fund. Despite the lengthy analysis supplied by the Director, none of the statutes or regulations governing the election card process or the transfer of liability squarely address the necessity of a filing by a claimant where the government neglected to mail the election card. In this case, the Director failed to comply with the administrative law judge's order allowing twenty days to supply evidence on the election card mailing. Thus, this case compels the consideration of the consequences of a total lack of notice to the claimant on that claimant's ability to reopen a Part B claim and the operator's ability to transfer its liability to the trust fund.

The Director's reliance on *Old Ben Coal Co. v. Luker*, 826 F.2d 688 (7th Cir.1987), is misplaced. In *Luker*, the Director presented evidence that the claimant received an election card. This lack of an obvious "good cause" for failing to file an election card affected the court's analysis and eventual remand to the administrative law judge for a "good cause" inquiry. We agree with the Seventh Circuit's position that the Old Ben Coal Co.'s filing of a belated election on Luker's behalf with the Board, a part of the Department of Labor, instead of the Social Security Administration, was a "wrong" filing. We hold, however, that where the claimant has failed to receive an election card, that claimant's presentation of that issue or the operator's raising of the transfer liability issue at a formal disability hearing suffices as a legitimate filing of a Part B claim. This reasoning does not conflict with the Seventh Circuit which, in *Luker*, went on to hold that "merely filing with the DOL instead of the SSA under the circumstances does not render the filing invalid." *Id.* at 698. The Seventh Circuit then remanded the case to the Board for factfinding on the issue of "good cause" for a late filing—an issue already clearly determined by the administrative law judge and Board in this case. *Id.*

The Director would have us require a claimant who has never received an election card to file an election card within six months of an administrative law judge's determination that the claimant did not, in fact, receive the card. Indeed, the Director urges us to deny Bellomy the right to file an election card in this matter because he has waited more than six months from the administrative law judge's 1984 decision in this case. Obviously, Bellomy can rely on a decision by the administrative law judge that he does not have to file an election card until that decision is reversed. We therefore decline to reverse the administrative law judge on that issue.

From a review of the legislative history of the Black Lung Benefits Act, the Director fails to glean that the congressional decision to reopen previously denied claims was motivated by a policy designed to compensate disabled miners. The administrative law judge's reasonable decision prevents a further and unnecessary step in this compensation scheme by forcing the Director to either supply evidence that an election card was mailed to the claimant or, in the absence of such proof, treat the "good cause" determination as a filing and a trigger of the liability transfer provisions. This will not result in a deluge of unforeseen claims being transferred to the trust fund. *See Luker*, 826 F.2d at 698. The Director can control the extent of liability transfers by producing evidence in a timely fashion on the issue of notice to the claimants. In cases where the Director has no evidence that notice was given to the claimant, it would be unfair to penalize the claimant by rewarding the Director, who has superior knowledge of whether notice was mailed to the claimant, with a rule forcing the claimant to take yet another preliminary step because of the Director's negligence. While the actions by Bellomy and Quarto Mining may constitute a "wrong" filing because they were essentially elections made before the administrative law judge instead of a postcard mailed to the Social Security Administration, we adopt the position of the Seventh Circuit and conclude that "filing with the DOL instead of the SSA under the present facts does not render the filing invalid." *Luker*, 826 F.2d at 698. There is no reason to believe that this holding "will have an appreciable effect on the number of cases reviewed and transferred (thus violating

congressional intent)." *Id.* Utilizing the date of the finding by the administrative law judge that no election card was mailed to the claimant will also suffice to fix the date of retroactive benefits in such cases absent evidence establishing the specific date of the miner's disability.

The decisions of the administrative law judge and the Board are supported by substantial evidence, are in accordance with the law, and are therefore affirmed.

WELLFORD, Circuit Judge, dissenting:

The notice of election card, after denial of a Part B claim, serves an explicit Congressional purpose as evidenced by the amendments to the Black Lung Act and the legislative history of those amendments. The purpose of the card is to set in motion the review process so that the Part B denied claims can be reviewed to determine whether the claimant would now be entitled to benefits for medical problems *for which the claimant was then suffering* under more lenient standards than under which the claim was originally decided. In 1977, the Act was amended to create a Trust Fund in response to the increasing amount of money that it was costing the federal government to pay benefits. Originally, the Trust Fund was to pay benefits to miners who did not engage in coal mine employment after December 31, 1969 or where the responsible employer could not be "found." The Fund was financed by collecting excise taxes on coal and requiring coal operators to contribute a certain percentage to the Fund. The 1977 amendments also included the adoption of more lenient standards for determining whether a claimant was entitled to benefits. A claimant who previously had a Part B claim denied could elect to have their claim reviewed under these new more lenient standards. (Review was automatic for those claimants who had their Part C claims denied. 30 U.S.C. § 945(b)(1)).

Congress again amended the Act in 1981 in light of "the Trust Fund's increasing indebtedness to the Treasury." *Old Ben Coal Co. v. Luker,* 826 F.2d 688, 694 (7th Cir.1987). These 1981 amendments increased the tax on coal and "the interest rate on operator liabilities to the Trust Fund, ..." *Id.* More important, (for purposes of this case),

[a] transfer of liability provision, section 205, was also enacted ... *to provide relief to a certain class of coal operators and insurers from unexpected, retroactive liability arising from the 1977 amendments.*

*Id.* (emphasis added). Because there was concern that this transfer liability provision would actually increase the Trust Fund's indebtedness, "legislators specifically requested information on how many claims would transfer, which claims they were and what their cost would be." *Id.*

The Department of Labor promulgated regulations which provide that a claimant *must* file a request for review with SSA in order for the liability to transfer. Although not discussed by either of the parties to this appeal, the regulations also provide that where an individual has had *more than one* pre-March 1, 1978 claim denied,

unless such claims were required to be merged by the agency's regulations, *the procedural history of each claim must be considered separately to determine whether the claim is subject to the transfer of liability provisions.*

20 C.F.R. § 725.496(c) (emphasis added). Only those claims that Congress intended to be transferred were to be actually transferred to the trust fund.

I would agree with *Luker* that an individual must ordinarily seek review of the previously denied Part B claim in order to satisfy the condition precedent for transfer liability. The purpose behind the statutory scheme is to require an evaluation, under different standards, of the Part B claim, particularly if a claimant's medical condition may have changed after March 1, 1978.

In this case, claimant Bellomy filed claims in 1970 and 1972, both of which were denied. *He continued to work in the mines until August of 1978* and filed another claim in April 1979. I would find the transfer of liability from the responsible operator to the Trust Fund should not take place until there has been a review under Reform Act standards of the earlier Part B

claim in 1972. (Bellomy conceded he did not "carry through" with his earliest claim).

The decision in this case grants Quarto Mining Co. an undeserved windfall. Bellomy will receive his Part C payments with an eligibility date of April 1, 1979, on his Part C claim, in any event. I would not relieve Quarto of liability until there has been a reevaluation of Bellomy's Part B claim under appropriate standards to determine Quarto Mining's liability.

I would, therefore, remand the matter for reevaluation of the Part B claim insofar as Quarto's potential liability is concerned. This would not adversely affect Bellomy who is, and has been, receiving black lung benefits for some ten years now. It would, instead, properly resolve the question of liability between the Director and Quarto Mining Co. in this unusual situation where it is uncertain, under the statute, whether Bellomy ever properly exercised his right to review the original Part B denials.