47 F.3d 1167
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jack COMBS, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 93-3752.
 United States Court of Appeals, Sixth Circuit.
 Feb. 8, 1995.
 
 Before: CELEBREZZE, KEITH, AND MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jack Combs ("Combs") petitions this court to review a final order of the Benefits Review Board (the "Board") affirming the ruling of an administrative law judge (the "A.L.J.") that Combs was entitled to compensation under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945 (1982), beginning October 1, 1988. For the reasons stated below, we AFFIRM.
 
 I. Statement of the Case
 
 2
 Jack Combs was born on October 24, 1927. He has a fourth grade education and worked underground in the mines of Kentucky for over seven years. He was employed by the Wilber & Turner, Blue Diamond Coal, and Sun Fire Coal companies as a loader. Combs ceased employment as a coal miner in 1953. For approximately thirty years after that time, until his retirement, Combs worked in non-coal mining occupations, primarily as a die-caster.
 
 
 3
 Combs filed two claims for black lung benefits. The first was a Part B claim apparently filed with a local social security office sometime in the 1960s.[1] The second was a Part C claim filed on October 11, 1988, one year after his retirement. On the application for the Part C claim, a box was checked indicating Combs had filed a previous claim but that claim had been withdrawn. Combs cannot read or write, except for signing his name. Combs signed the form.
 
 
 4
 The A.L.J. considered the application on January 28, 1991. Combs testified that he had filed a claim for black lung benefits in the "middle sixties" with the social security office. When questioned about any communications regarding the Part B claim, Combs testified that a man came to his house and told him "if you ever want to reopen it, ... you can come down and reopen it." Combs testified he told the man he did not have time to talk with him. Combs also testified: 1) he did not know why he would have to reopen his claim; 2) he signed no papers at that time; and 3) he received no papers or card from the government concerning the claim. Combs stated on cross-examination that he did not try to contact the man who came to his house or anyone at social security to discuss the claim.
 
 
 5
 Regarding the Part C claim, Combs testified he did not check the box indicating his claim was withdrawn. He stated he could not read or write but his wife might have been with him when he signed the application. On cross-examination, Combs conceded his memory was better in 1988 when he filed the claim than at the time of the hearing.
 
 
 6
 During the administrative hearing, Combs testified he worked for the Grant Miller Coal Company from age 12 or 13 to age 17. The Director asked Combs why there was no reference to the Grant Miller mine in the list of his employers on the 1988 application. Combs testified he thought no one would believe that a 12 or 13 year old boy worked in the coal mines. When the Director questioned Combs about his date of birth, Combs averred that his date of birth is October 24, 1927 but he told the coal company his date of birth was October 24, 1928 in order to start work a year earlier.[2]
 
 
 7
 Combs attorney asked the Director to produce the file on the Part B claim. Director's counsel stated no paper file existed for the case but a computer record indicated an election card[3] had been filed.[4] Combs requested the A.L.J. grant benefits based on the Part B claim beginning on March 1, 1978, the earliest date on which he could have filed for review of his Part B claim. See 30 U.S.C. Sec. 945.
 
 
 8
 The A.L.J. ruled that Combs withdrew his Part B claim and thus the only claim under consideration was the Part C claim. The ruling on the withdrawal was based on the inconsistencies in Combs's testimony regarding his date of birth and coal mine employment and the fact that his wife who can read and write may have assisted him in filling out the benefits application. In considering the Part C claim, the A.L.J. discussed the inconsistencies in Combs's testimony stating
 
 
 9
 Although the discrepancy in the birthdate is irrelevant to the ultimate determination herein, it raises questions regarding the accuracy of Claimant's testimony with respect to the lenghth (sic) of his coal mine employment, and undermines his credibility regarding whether or not he withdrew his earlier claim.
 
 
 10
 The A.L.J. held that Combs established over 7 years of coal mine employment, from October 1945 to January 1953. The A.L.J. held further, after reviewing the medical evidence, that Combs was totally disabled within the meaning of the Act and awarded benefits retroactive to October 1, 1988, the first day of the month in which he filed his Part C claim, pursuant to Section 725.503(b).
 
 
 11
 Combs appealed the Decision and Order to the Board. On May 24, 1993, the Board affirmed the A.L.J.'s ruling.
 
 II. Discussion
 
 12
 In his petition Combs asserts: 1) the Department of Labor had a duty to produce evidence that Combs withdrew his Part B claim with the Social Security Administration or that the Social Security Administration complied with its regulations in approving the withdrawal; 2) the Department of Labor failed to comply with its own regulations; and 3) the Board's decision to affirm the A.L.J.'s ruling was not supported by substantial evidence. For the following reasons, we disagree.
 
 
 13
 This court's scope of review in appeals from the Board is narrow. Director, Office of Workers' Comp. Programs v. Quarto Mining Company, 901 F.2d 532, 536 (6th Cir.1990). The review is limited to whether the Board "committed any legal errors or exceeded its statutory scope of review of the administrative law judge's factual determinations. Id. (citation omitted) Under Sec. 921(b)(3) the A.L.J.'s findings of fact may only be set aside if they are not supported by "substantial evidence in the record considered as a whole." Id.; see also Director, Office of Worker's Comp. Programs v. Consolidation Coal Co., 884 F.2d 926, 929 (6th Cir.1989) ("The Board may not engage in a de novo review, ... or substitute its own factual findings because it believes them to be more reasonable than those reached by the A.L.J." (citation omitted)).
 
 
 14
 The Sixth Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wright v. Island Creek Coal Co., 824 F.2d 505 (6th Cir.1987) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the A.L.J.'s decision was supported by substantial evidence, this court must affirm the decision. Kolesar v. Youghiougheny and Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). The court and the Board, however, may reverse conclusions of law if found to be erroneous. Consolidation Coal Co., 884 F.2d at 929 (citations omitted).
 
 
 15
 A. The Department of Labor had no duty to produce evidence regarding Combs's Part B claim filed with the Social Security Administration.
 
 
 16
 Combs argues the A.L.J. erred as a matter of law by finding the Part B claim withdrawn in the absence of proof that the procedures for withdrawing a claim were followed. Combs also argues the Department of Labor failed to fulfil its duty to produce the Part B file.
 
 
 17
 Combs arguments fail. There is no support for the proposition that the Department of Labor has a duty to produce documentary evidence regarding Combs's claim. Combs's Part B claim was administered by the Social Security Administration. The claim was apparently permissibly withdrawn by them. The Social Security Administration has subsequently destroyed Combs's records. Each agency has a duty to maintain its own records, but there is no authority which suggests one agency has any responsibility toward the records of another agency. See 44 U.S.C.A. Sec. 3101 (stating "[t]he head of each Federal agency shall make and preserve records ... designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities."); see also 20 C.F.R. Sec. 725.102(a) ("All reports, records, or other documents filed with the OWCP with respect to claims are the records of the OWCP." (emphasis added)). Thus, there was no duty for the Director to produce evidence regarding the withdrawal of the Part B claim.
 
 
 18
 B. The Department of Labor complied with its regulations.
 
 
 19
 The Department of Labor acknowledges a duty to follow its procedural regulations when it receives a black lung claim. While 20 C.F.R. Sec. 725.404 places no duty on the Department of Labor to develop general evidence, regulations do require the district director to provide claimant with a pulmonary evaluation, to develop medical evidence and "where appropriate, collect other evidence necessary to establish ... [a]ll other matters relevant to the determination of the claim." 20 C.F.R. Secs. 725.405(b) and (d) (emphasis added). There is no evidence to indicate that the Part B claim was relevant to the determination of the Part C claim.
 
 
 20
 Combs also argues that because no election card was sent to him, the six month period for requesting review under 20 C.F.R. Sec. 410.704(d) never began to run. Alternatively, Combs argues that the government was required to use certified or registered mail when notifying Combs of his eligibility to elect review and since it failed to do so, it cannot use the absence of information in its records to Combs's disadvantage.
 
 
 21
 Both arguments fail. While section 410.704(a) requires notification for pending or denied claims and notification is required to occur through service or registered mail pursuant to 33 U.S.C. 919(a) as incorporated by 30 U.S.C. 932(a), withdrawn claims are treated as if they were never filed and, as such, are neither pending nor denied. 20 C.F.R. Sec. 725.306(b); 20 C.F.R. Sec. 410.232(c). Thus, Combs was not entitled to receive an election card and therefore both of Combs's arguments become moot. While there is some ambiguity in the facts as to whether an election card was ever mailed, the resolution of the status of the Part B claim is the province of the A.L.J. and the propriety of the A.L.J.'s ruling is discussed below.
 
 
 22
 C. The A.L.J.'s finding that Combs's claim was withdrawn is supported by substantial evidence.
 
 
 23
 Combs argues that in order for the A.L.J. to find the Part B claim was withdrawn the A.L.J. must find evidence that the procedures for withdrawal of a federal black lung claim were followed. The procedures include a written request from the claimant and formal approval of the request by the Social Security Administration. See 20 C.F.R. Sec. 410.232. Absent such evidence, Combs argues, the A.L.J.'s finding must be reversed.
 
 
 24
 Combs improperly compares the case at bar with Keener v. Eastern Associated Coal Co., 954 F.2d 209 (4th Cir.1992) in which the court affirmed lower decisions which ruled a claim had been withdrawn. In Keener, the claimant signed a withdrawal form, explaining his reasons for doing so, and received written notification of the approval of his request. The mere fact that evidence of withdrawal was abundant in Keener, however, has no bearing on whether substantial evidence supports the A.L.J.'s ruling in this case.
 
 
 25
 In the instant case, the A.L.J. held Combs withdrew his Part B claim and thus can not recover benefits prior to October 1988. The A.L.J. based the decision on 1) Combs signature on the application indicating the claim had been withdrawn; 2) the presence of his wife, who can read and write, when the application was filled out; and 3) the inconsistencies in Combs's testimony regarding his age and his employment history. The A.L.J. also stated that the inconsistencies in Combs's testimony "undermine[d] his credibility regarding whether or not he withdrew his earlier claim." This court, applying a substantial evidence standard, "may not reweigh the evidence or make credibility determinations." Adams v. Peabody Coal Co., 816 F.2d 1116, 1120 (6th Cir.1987) (citing Moseley v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985); see also Dempsey v. Director, OWCP, 811 F.2d 1154, 1162 (7th Cir.1987) ("Where in a black lung claim, the evidence is conflicting, or where witnesses differ, the trier of fact is empowered to make credibility determinations and to resolve inconsistencies of the evidence."). The A.L.J.'s credibility determination and resolution of the inconsistencies in this case must stand. As the signature, presence of Combs's literate wife, and inconsistencies in the evidence constitute substantial evidence, the Board did not err in affirming the A.L.J.'s ruling.
 
 III. Conclusion
 
 26
 For the reasons stated above, we AFFIRM the decision of the Benefits Review Board.
 
 
 
 [1]
 Claims for black lung benefits filed prior to December 31, 1973 are classified as Part B claims and were administered by the Social Security Administration of the Department of Health, Education and Welfare (now the Department of Health and Human Services). Claims for black lung benefits filed after December 31, 1973 are classified as Part C claims and are administered by the Department of Labor. Part B claims pending on March 1, 1978, or denied on or before that date, were eligible for review by the Department of Labor pursuant to 30 U.S.C. Sec. 945
 
 
 [2]
 The A.L.J. noted in the Decision and Order that the birthdate given by Combs would have actually made him a year younger
 
 
 [3]
 An election card is notice to the claimant that he or she is eligible to elect review of his or her claim
 
 
 [4]
 While the case was pending before the Board, the Director received notification that Combs's Part B claim was transferred in 1982 from the Social Security Administration to a federal records center where it was subsequently destroyed