56 F.3d 66
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 The YOUGHIOGHENY AND OHIO COAL COMPANY, Petitioner,
v.
Mary Jane NAGY, Widow of Julius Nagy, Respondent,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest
 No. 94-3312.
 United States Court of Appeals, Sixth Circuit.
 May 30, 1995.
 
 Before: MERRITT, Chief Circuit Judge; SILER, Circuit Judge; and EDMUNDS, District Judge*
 MERRITT, Chief Judge.
 
 
 1
 The Youghiogheny and Ohio Coal Company ("Y&O") appeals the grant of black lung benefits to claimant Julius Nagy. Because we find substantial evidence supports the findings of the administrative law judge ("ALJ"), we affirm the award of black lung benefits for disability and death from pneumoconiosis. The problem in this case is that there were two causes of claimant's disability and death, cardiovascular disease and black lung disease.
 
 
 2
 If substantial evidence supports the factual findings of the ALJ that heard the case, we must affirm those findings. Director, OWCP v. Quarto Mining, 901 F.2d 532, 536 (6th Cir. 1990). Although we examine the record as a whole, we do not make determinations of credibility or otherwise engage in de novo review of the evidence. Pyro Mining Co. v. Slaton, 879 F.2d 187, 191 (6th Cir. 1989). "Substantial evidence" is defined by the Supreme Court as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."' Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).
 
 
 3
 The ALJ made three challenged findings in this case. He found that Mr. Nagy had simple coal worker's pneumoconiosis, commonly known as "black lung", that he was totally disabled by pneumoconiosis, and that pneumoconiosis was a contributing cause of his death.
 
 
 4
 Substantial evidence supports the ALJ's finding that Mr. Nagy had simple coal worker's pneumoconiosis. Prior to his death in 1981, Mr. Nagy complained of numerous respiratory difficulties. He suffered from dyspnea** after mild exertion and found it difficult to walk the 500 feet from his house to the local cafe. His wife testified that it took him fifteen minutes to cover this short distance. He stated that he often was jarred from his sleep by violent coughing fits, and slept on two large pillows to minimize their onset. Two doctors administered ventilatory tests that showed low respiratory abilities and lead Dr. Delvecchio, retained by the Department of Labor, to diagnose pneumoconiosis. Most importantly, Dr. Parmar, who performed the autopsy necessary to diagnose pneumoconiosis with certainty, found that Mr. Nagy suffered from simple coal worker's pneumoconiosis. Finally, Dr. Perper, a pathologist who examined slides of lung tissue taken during the autopsy, viewed them under polarized light and found the presence of silica, which is indicative of pneumoconiosis.
 
 
 5
 Against these three diagnoses of pneumoconiosis are two doctors, Dr. Kress and Dr. Kleinerman, both retained by the coal company, who deny the presence of pneumoconiosis. The ALJ was forced to choose between these conflicting opinions regarding the presence of pneumoconiosis, and chose those which diagnosed black lung. The ALJ gave the following reasons for his choice:
 
 
 6
 Upon analysis and reflection I find Dr. Kress' report quite paradoxical. Both Dr. Delvecchio's and Dr. Kress' pulmonary function studies yielded invoking values [under Sec. 727.203] and met all quality standards yet Dr. Kress found no coal workers' pneumoconiosis and no pulmonary impairment. Nowhere in this record does Dr. Kress explain how someone with no pulmonary impairment could produce the pulmonary function results produced by Mr. Nagy. ... In summary, for the[se] reasons[], I have given very little weight to Dr. Kress' reports.
 
 
 7
 ALJ Opinion at 3-4.
 
 
 8
 Likewise, the ALJ discounted Dr. Kleinerman's analysis:
 
 
 9
 While Dr. Kleinerman is at least as famous as Dr. Perper, I think Dr. Perper did a more workman-like job in this case. Dr. Kleinerman made a specific finding of no silicosis but this report did not indicate he used polarized light while viewing the slides under a microscope[, unlike Dr. Perper]. Therefore, I have given less weight to Dr. Kleinerman's report than to the reports of Drs. Perper and Parmar.
 
 
 10
 ALJ Opinion at 4.
 
 
 11
 Such determinations of credibility are the province of the ALJ in black lung cases. The ALJ gave more credibility to the reports of three doctors and gave plausible reasons for discounting those that did not diagnose pneumoconiosis. Accordingly, substantial evidence supports the ALJ's finding that Mr. Nagy had pneumoconiosis.
 
 
 12
 Substantial evidence also supports the ALJ's finding that Mr. Nagy was totally disabled by pneumoconiosis. His last job with the Y&O was that of "car dropper." The basic duties of a car dropper consist of riding the coal cars into the coal yard and walking back to the starting point -- a job requiring more physical exertion than Mr. Nagy could reasonably be expected to adequately expend given his condition. Furthermore, Dr. Perper gave his unqualified opinion that Mr. Nagy's pneumoconiosis prevented him from performing any gainful employment: "The patient's symptoms of shortness of breath, wheezing and dyspnea ... clearly disabled him.... [T]he coal worker's pneumonoconiosis was a significant contributing factor to [his] disability and death." Dr. Perper's Report at 4. This opinion is supported by the testimony from claimant's wife and provides additional support for the ALJ's finding. Dr. Delvecchio and Dr. Parmar stated no opinion about Mr. Nagy's disability, while Drs. Kleinerman and Kress opined that Mr. Nagy was not disabled by pneumoconiosis. For the reasons cited above, the ALJ placed more weight on Dr. Perper's report than the others, and decided that claimant was totally disabled by pneumoconiosis. Furthermore, he found that Dr. Kress had "erroneously described" Mr. Nagy's prior coal mine employment, which further subtracted from the credibility of his opinion. The evidence supporting the ALJ's finding of total disability is sufficient to convince a reasonable mind that Mr. Nagy was disabled from pneumoconiosis. There is substantial evidence -- without regard to the existence of any statutory or regulatory presumption -- from which the ALJ could make a reasonable finding that black lung disease was a contributing cause of claimant's disability.
 
 
 13
 Substantial evidence also supports the ALJ's finding that Mr. Nagy's death was caused in part by pneumoconiosis. Dr. Parmar found pneumoconiosis in his autopsy of Mr. Nagy, and found bronchopneumonia to be one of two significant contributing causes of death. It is not unreasonable to conclude, as did the ALJ, that a person without pneumoconiosis is better able to withstand the onslaught of severe respiratory distress, and that had Mr. Nagy not suffered from pneumoconiosis he would not have died from bronchopneumonia. Only two physicians had the opportunity to examine the autopsy report alongside the slides of lung tissue, and one of them, Dr. Perper, interpreted the autopsy report in this way. The other physician, Dr. Kleinerman, arrived at the opposite conclusion. The ALJ gave sufficient reasons for crediting Dr. Perper's report over Dr. Kleinerman's. Therefore, substantial evidence supports the finding that black lung disease was a substantial contributing cause of claimant's death.
 
 
 14
 Accordingly, we AFFIRM the award of benefits on Mr. Nagy's claim for total disability and death from pneumoconiosis.
 
 
 
 *
 The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 **
 Dorland's Medical Dictionary, 27th ed. (1988) defines dyspnea as "difficult or labored breathing."