**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HARMAN MINING COMPANY,
<u>Petitioner,</u>

v.

HAROLD LAYNE; DIRECTOR, OFFICE OF

No. 97-1385

WORKERS' COMPENSATION PROGRAMS,
UNITED' STATES DEPARTMENT OF
LABOR,
<u>Respondents.</u>

On Petition for Review of an Order
of the Benefits Review Board.
(92-378-BLA)

Argued: April 7, 1998

Decided: August 27, 1998

Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge,
and OSTEEN, United States District Judge for the
Middle District of North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Phillips wrote the
opinion, in which Judge Williams and Judge Osteen joined.

_____

**COUNSEL**

**ARGUED:** Ronald Eugene Gilbertson, KILCULLEN, WILSON &
KILCULLEN, CHARTERED, Washington, D.C., for Petitioner.
Joseph E. Wolfe, WOLFE & FARMER, ATTORNEYS, Norton, Vir-

ginia, for Respondent Layne; Patricia May Nece, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director. **ON BRIEF:** Bobby Steve Belcher, Jr., WOLFE & FARMER, ATTORNEYS, Norton, Virginia, for Respondent Layne. J. Davitt McAteer, Acting Solicitor of Labor, Donald S. Shire, Associate Solicitor, Sarah M. Hurley, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Harman Mining Company ("Harman"), petitions for review of a decision by the United States Department of Labor Benefits Review Board ("BRB"). Harman contends that the BRB erred in affirming the decision of an Administrative Law Judge ("ALJ") that awarded benefits to Harold Layne under the Black Lung Benefits Act ("the Act"), 30 U.S.C. § 901 et seq., and declined to transfer liability for those benefits to the Black Lung Disability Trust Fund ("the Trust Fund"). We affirm.

I

As originally enacted, Title IV of the Federal Coal Mine Health and Safety Act of 1969 ("the 1969 Act") established two programs-- Part B and Part C--under which coal miners disabled by pneumoconiosis could receive benefits. See Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 91-173, 83 Stat. 792-98 (1969) (codified as amended at 30 U.S.C. § 901 et seq. ). Part B was set up to be administered by the Social Security Administration ("SSA") and to cover all claims filed on or before December 31, 1972. See id. at 83 Stat. 792-95. Part B benefits were to be paid with federal funds. See

2

id. at 83 Stat 794. Part C was set up to be administered by the Department of Labor ("DOL") and to cover claims filed after December 31, 1972. See id. at 83 Stat. 795-98. Part C benefits were to be paid pursuant to state workers' compensation statutes approved by the DOL as providing adequate coverage for pneumoconiosis; if the state programs were not approved, benefits were to be paid by the responsible mine operators or their successors; if such operators could not be found, benefits were to be paid by the federal government. See id. DOL has not approved any state workers' compensation statutes as providing adequate coverage. See 20 C.F.R.§ 722.152.

In 1972, Congress amended the 1969 Act, renaming it the Black Lung Benefits Act ("the Act"). See Black Lung Benefits Act of 1972, Pub. L. No. 92-303, 86 Stat. 150 (1972). Among other things, the 1972 amendments extended the period for filing Part B claims to June 30, 1973 and made it easier for miners to prove entitlement to benefits. See Helen Mining Co. v. Director, OWCP, 924 F.2d 1269, 1271 (3d Cir. 1991).

In 1978, Congress passed the Black Lung Benefits Reform Act ("the Reform Act"). See Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, 92 Stat. 95 (1978). The Reform Act further relaxed the standards for benefit eligibility and permitted claims denied before March 1, 1978 (the effective date of the Reform Act) to be reexamined under the new standards. See Helen Mining, 924 F.2d at 1272. While review of pending or denied Part C claims was made automatic, SSA had to notify Part B claimants of their right to review and the claimants had to elect to have their claims reviewed under the new Reform Act standards. See id. If granted on review, Part B claims were converted to Part C claims for purposes of benefit liability. See id.

Along with the Reform Act, Congress enacted the Black Lung Benefits Revenue Act of 1977 ("the Revenue Act"). See Black Lung Benefits Revenue Act of 1977, Pub. L. No. 95-227, 92 Stat. 11 (1978). The Revenue Act created the Trust Fund, to be funded by a tax on coal sales. See id. The Trust Fund was to bear the administrative costs of the black lung benefits program, cover the federal government's existing Part C liability (for benefits attributable to mine operators who could not be found), and assume responsibility for pay-

3

ing benefits where a miner's last employment ended before January 1, 1970. See Helen Mining, 924 F.2d at 1272. Since operators remained liable, however, for Part C claims made by miners whose employment continued after 1969, and because of the conversion of approved Part B claims into Part C claims, mine operators became liable for all benefits granted to post-1969 miners under the Reform Act's liberalized standards. See id. As the number of claims granted soared, mine operators found themselves saddled with massive, retroactive, unanticipated liability for Part C claims, which their insurers refused to cover. See id. (citing Lopatto, The Federal Black Lung Program: A 1983 Primer, 85 W.Va.L.Rev. 677, 693-94 (1983)). In 1981, Congress responded by again amending the Act. See Black Lung Benefits Revenue Act of 1981, Pub. L. No. 97-119, 95 Stat. 1635 (1981). The 1981 amendments included a transfer of liability provision providing that in cases where there was a claim denied before March 1, 1978 and the claim "is or has been approved in accordance with [the Reform Act's liberalized standards]," the Trust Fund, not individual coal mine operators, would be responsible for paying benefits. Id. (codified at 30 U.S.C. § 932(c)(2), (j)(3)). Against this statutory framework, we consider Layne's claim. On June 6, 1973, claiming he was totally disabled by black lung disease, Layne filed a claim for black lung benefits under Part B of the Act. On May 12, 1974, he applied for benefits under Part C. In June 1975, SSA denied Layne's Part B claim. (J.A. 54-57.) On July 23, 1976, DOL approved his Part C claim. Harman requested a hearing and DOL instituted interim benefit payments, pending final adjudication. On April 12, 1979, DOL made an initial determination that Layne was entitled to benefits. (See id. at 58.) Harman disputed the award and requested a formal hearing. On December 13, 1983, a DOL ALJ held a formal hearing, (see id. at 83), and on August 31, 1984, issued an opinion awarding benefits. (See id. at 40.) The ALJ found that Layne was entitled under 20 C.F.R. § 727.203(a) to the interim presumption of total disability, (see id. at 35),**1** and that Harman had not rebutted the presumption

_____

**1** 20 C.F.R. § 727.203(a) provides:

> Establishing interim presumption. A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or

4

under 20 C.F.R. § 727.203(b)(2) ("(b)(2) rebuttal") or (b)(3) ("(b)(3) rebuttal"). (See id. at 39-40.)[2] Also, the ALJ refused to transfer liability for the benefits to the Trust Fund. (See id. at 34.)

_____

death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis (see § 410.428 of this title);

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in § 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than [certain values specified in this regulation];

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than [certain values specified in this regulation];

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment;

(5) In the case of a deceased miner where no medical evidence is available, the affidavit of the survivor of such miner or other persons with knowledge of the miner's physical condition, demonstrates the presence of a totally disabling respiratory or pulmonary impairment.

20 C.F.R. § 727.203(a).

[2] 20 C.F.R. § 727.203(b) provides, in relevant part:

Rebuttal of interim presumption. In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

. . .

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title); or

5

Harman appealed to the BRB, arguing, in part, that the ALJ erred in finding that liability should not transfer and that the evidence was insufficient to establish (b)(2) rebuttal. (See id. at 30.) On November 26, 1986, the BRB affirmed the ALJ's determination that liability should not transfer but vacated and remanded for reconsideration on the issue of (b)(2) rebuttal. (See id. at 29-31.)

On remand, the ALJ again found (b)(2) rebuttal not established. (See id. at 27.) Harman appealed, arguing, in part, that the ALJ erred in not further considering the evidence under the (b)(3) rebuttal standard and that the record should be reopened for new (b)(2) rebuttal evidence. (See id. at 22.) On appeal, the BRB agreed that the case had to be remanded for consideration of the evidence under the (b)(3) standard but rejected Harman's contention regarding reopening the record, noting that on remand, the decision to reopen was within the ALJ's discretion. (See id. at 22-23.) When the case went back to the ALJ on remand, Harman filed a motion requesting that the record be reopened for development of further (b)(2) and (b)(3) rebuttal evidence.[3] The ALJ refused to reopen the record and again awarded benefits. (See id. at 17-18.) Harman appealed arguing that (1) liability must

_____

> (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment . . . .

20 C.F.R. § 727.203(b).

Section 410.412(a) provides, in relevant part:

> A miner shall be considered totally disabled due to pneumoconiosis if:
>
> (1) His pneumoconiosis prevents him from engaging in gainful work in the immediate area of his residence requiring the skills and abilities comparable to those of any work in a mine or mines in which he previously engaged with some regularity and over a substantial period of time . . . .

20 C.F.R. § 410.412(a).

[3] Although the motion to reopen is not part of the record on appeal, neither of the respondents challenge Harman's representation regarding its filing.

transfer to the Trust Fund; (2) the ALJ erred in finding that it had not established (b)(3) rebuttal; and (3) the ALJ abused his discretion in refusing to reopen the record. (See id. at 8.) The BRB affirmed. (See id. at 14.) When Harman moved for reconsideration, the BRB granted its motion but denied the relief requested. (See id. at 4.) Harman then petitioned for review by this court.

II

The BRB reviews the ALJ's findings to determine if they are supported by substantial evidence. See Doss v. Director, OWCP, 53 F.3d 654, 658 (4th Cir. 1995). We review the BRB's decision only for errors of law and to verify that the BRB applied the proper standard in reviewing the ALJ's factual determinations. See id.

Harman argues that the ALJ erred in concluding that liability does not transfer to the Trust Fund. Alternatively, Harman argues that it is entitled to a new administrative hearing to present additional evidence rebutting the presumption of disability applied by the ALJ. Layne joins Harman's argument that liability must transfer to the Trust Fund but disagrees with its suggestion that a new hearing is warranted. The Director, Office of Workers' Compensation Programs, DOL ("the Director") opposes transfer but does not contest the ALJ's award of benefits and represents that it will accept liability if we find that liability must transfer to the Trust Fund. (Director's Resp. at 38 n.18.) The Director opposes Harman's contention that it is entitled to a new trial.

A

Liability transfers to the Trust Fund for any claim for benefits which "was the subject of a claim denied before March 1, 1978" and "is or has been approved in accordance with the provisions of [30 U.S.C. § 945]." 30 U.S.C. § 932(c), (j)(3). 30 U.S.C. § 945 ("section 945") provides for the review, under the liberalized Reform Act standards, of claims pending on or denied before March 1, 1978. See 30 U.S.C. § 945. Section 945 further provides that SSA "shall promptly notify each claimant" of his right to elect review. See id. § 945(a)(1). The relevant DOL regulations provide that no claim filed with and denied by the SSA is subject to the Act's transfer of liability provi-

7

sions unless the claimant requested review under section 945. See 20 C.F.R. § 725.496(d). The regulations specify that "[s]uch review must have been requested by the filing of a valid election card or other equivalent document with the [SSA] in accordance with [section 945(a)] and its implementing regulations at 20 C.F.R. 410.700-707." Id. 20 C.F.R. § 410.704(d) in turn provides that if the SSA does not receive a request for review "within 6 months from the date the notice is mailed," the claimant will be considered to have waived his right to review unless he can establish "good cause" for "not responding within this time period." Id. § 410.704(d).

It is undisputed that Layne's Part B claim is a"claim denied before March 1, 1978." 30 U.S.C. § 932(c), (j)(3). It is also undisputed that while Layne's Part B claim was never reviewed under section 945, his Part C claim was reviewed and "approved in accordance with the provisions of [section 945]." Id. Relying on these facts, Harman argues that when the procedural histories of the Part B and C claims merge, the requirements for transfer are met.**4**

The regulations provide that

> [w]here more than one claim was filed with the[SSA]
> and/or the [DOL] prior to March 1, 1978 . . ., unless such
> claims were required to be merged by the agency's regula-
> tions, the procedural history of each such claim must be
> considered separately to determine whether the claim is sub-
> ject to the transfer of liability provisions.

20 C.F.R. § 725.496(c). According to Harman, the agency's regula-

_____

**4** The BRB rejected Harman's merger argument, relying on its decision in Chadwick v. Island Creek Coal Co., 7 BLR 1-883 (1985), aff'd, 8 BLR 1-447 (1986) (en banc). (J.A. 30.) Under Chadwick, merger does not result in an integration of the procedural histories of the merged claims; rather, merger extinguishes the procedural history of the first claim. Chadwick has been rejected by at least two circuits, see Old Ben Coal Co. v. Luker, 826 F.2d 688, 695-98 (7th Cir. 1987); Helen Mining, 924 F.2d at 1274 n.7 (following Old Ben), and by all parties in this litiga-tion. (Appellant's Br. at 30; Layne's Resp. at 22-23; Director's Resp. at 38.)

8

tions do require merger. Specifically, Harman points to 20 C.F.R. § 725.309(c). That regulation provides, in relevant part:

> A claimant who filed a claim for benefits under Part B . . . or Part C . . . before March 1, 1978, and whose previous claim(s) are pending or have been finally denied, who files an additional claim under this part, shall have the later claim merged with any earlier claim subject to review under part 727 of this subchapter.

Id. § 727.309(c). 20 C.F.R. Part 725 sets forth the procedures and standards for filing, processing, adjudicating, and paying Part C claims. See id. § 725.2. Part 727 implements section 945. See id. § 727.1(d).

The Director challenges Harman's contention that 20 C.F.R. § 725.309(c) requires merger, arguing that"[b]y its very terms," the regulation "provides for a merger of claims only when an additional claim is filed with the DOL after March 1, 1978 -- the effective date of the 1977 amendments." (Director's Resp. at 36 (emphasis in original).) Here, the Director argues, both of Layne's claims were filed before March 1, 1978.

The Director's reasonable interpretation of its regulations is entitled to deference. See Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837 (1984). Here, the Director's interpretation is reasonable; the date restriction in the first clause of the regulation clearly implies that the "additional claim" must be filed after March 1, 1978. Since the additional claim in this case was not filed after that date, merger cannot occur under 20 C.F.R. § 725.309(c).

Harman suggests that the Director's interpretation"results in the absurdity of eliminating merger of simultaneously pending claims prior to March 1, 1978." (Reply at 10.) The Director's interpretation, however, does not preclude the merger of such claims; 20 C.F.R. § 727.103(c) provides for the handling of multiple pre-March 1, 1978 claims and allows, in certain circumstances for their merger.[5]

_____

[5] Harman does not argue that 20 C.F.R. § 727.103(c) requires merger here.

9

Standing alone, neither Layne's Part B claim nor his Part C claim satisfies the statutory requirements for transfer. The Part C claim was not denied prior to March 1, 1978; the Part B claim was not approved under section 945. Thus, even if we were to accept the alternate contention made by Harman and Layne that Layne's failure to request review of the Part B claim is excused for good cause, the Part B claim still would not satisfy the statutory requirements for transfer. As indicated above, 20 C.F.R. § 725.496(d) provides that no claim may transfer unless the claimant has requested review. While good cause may prevent the claimant's failure to timely request review from barring transfer, it cannot be a basis for creating the legal fiction that the claim was actually reviewed and approved under section 945, as required by the Act's transfer of liability provision. See 30 U.S.C. § 932(c), (j)(3).

In Director, OWCP v. Quatro Mining Co., 901 F.2d 532 (6th Cir. 1990), the United States Court of Appeals for the Sixth Circuit allowed liability for a claim to transfer to the Trust Fund where the claimant's failure to request review was excused for good cause but where the claim was never approved under section 945. In Quatro, the ALJ determined that the miner never received an election card and therefore had good cause for his failure to request review. See id. at 534. The ALJ dismissed the mine operator as the responsible party and transferred liability to the Trust Fund. See id. at 534-35. The BRB affirmed and the Director appealed. See id. at 535. Significantly, the only issue raised by the Director on appeal was the jurisdiction of the ALJ to make the "good cause" determination, see id. at 536; the absence of a "claim . . . approved in accordance with the provisions of section 945" was not advanced by the Director as a reason to reverse the transfer decision. Thus, the Quatro court did not address the specific issue we find to be dispositive here.

For the reasons discussed above, we find that Layne's Part B and Part C claims cannot merge under 20 C.F.R. § 725.309(c). Because neither of Layne's claims alone can satisfy the requirements for transfer and because Harman has pointed to no other applicable merger regulation, we conclude that liability cannot transfer to the Trust Fund and Harman cannot be dismissed as a responsible party.

B

In the alternative, Harman contends that the ALJ's denial of its motion to reopen the record warrants a new trial. According to Harman, after the record was closed in the case, the ALJ and BRB applied new, stricter standards for (b)(2) and (b)(3) rebuttal without reopening the record and allowing Harman to present additional evidence to satisfy the new standards. According to Harman, the ALJ's refusal to reopen the record violated its rights under sections 554 and 556 of the Administrative Procedures Act ("APA") and under the Due Process Clause of the Fifth Amendment.[6] We reject these contentions and conclude that the ALJ did not abuse his discretion in refusing to reopen the record for additional rebuttal evidence. See 20 C.F.R. § 725.455(c) ("The conduct of the hearing and the order in which allegations and evidence shall be presented shall be within the discretion of the [ALJ] . . . .").

20 C.F.R. § 727.203(a) creates an interim presumption of disability if certain medical requirements are met. See supra note 1. An employer can establish (b)(2) rebuttal by proving "that the individual is able to do his usual coal mine work or comparable and gainful work," 20 C.F.R. § 727.203(b)(2); he can establish (b)(3) rebuttal by proving "that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." Id. § 727.203(b)(3).

Citing the BRB's decision in Jones v. The New River Co., 3 BLR 1-199 (1981), Harman argues that at the time of the initial hearing in 1983, an employer could establish (b)(3) rebuttal by showing that the miner's pneumoconiosis was not totally disabling. (Appellant's Br. at 32.) According to Harman, in Bethlehem Mines Corp. v. Massey, 736 F.2d 120 (4th Cir. 1984), this court tightened the (b)(3) rebuttal standard, requiring that the employer rule out any contribution to or

_____

[6] Sections 554 and 556 of the APA apply to DOL black lung adjudications. See 33 U.S.C. § 919(d); 30 U.S.C. § 932(a); see also Bethlehem Mines Corp. v. Henderson, 939 F.2d 143, 148 (4th Cir. 1991).

Harman does not argue that the "new" standards are inapplicable in this case.

aggravation of the claimant's impairment by coal mine employment. (Appellant's Br. at 32.) Harman contends that because Massey was decided after the record was closed in this case and because the ALJ and BRB applied the decision in their rulings, it is entitled to present additional evidence to satisfy the "new" Massey standard for (b)(3) rebuttal.

Harman correctly characterizes our holding in Massey but incorrectly suggests that the case constituted a change in the law. In Massey, we rejected the mine operator's argument that an employer can establish (b)(3) rebuttal by showing that the miner's pneumoconiosis is not in and of itself totally disabling. We stated: "Pneumoconiosis contracted during coal mine employment must be a causative factor in the miner's total disability, but it need not be the exclusive causative factor rendering the claimant totally disabled in order to be compensable under the Black Lung Act." Id. at 123. Therefore, we concluded, in order to establish (b)(3) rebuttal, "the employer must rule out the causal relationship between the miner's total disability and his coal mine employment." Id. (emphasis in original). Our holding in Massey expressly relied on our prior decision in Hampton v. Department of Labor, 678 F.2d 506 (4th Cir. 1982) (per curiam). Hampton indicated that in order to establish (b)(3) rebuttal, the employer had to "rule out the causal relationship between [the miner's] disability and his coal mine employment." Id. at 508 (citing Rose v. Clinchfield Coal Co., 614 F.2d 936 (4th Cir. 1980)). Thus, rather than articulating a new and stricter standard for (b)(3) rebuttal, Massey simply reaffirmed preexisting law. Since there was no change in the law regarding (b)(3) rebuttal, the ALJ did not abuse his discretion in denying Harman's motion to reopen the record for additional (b)(3) rebuttal evidence.

Regarding (b)(2) rebuttal, Harman argues that at the time of the hearing, existing BRB decisions held that an employer could establish (b)(2) rebuttal by demonstrating that a miner was not totally disabled by a respiratory or pulmonary impairment.[7] Harman further argues that after the record was closed in this case, this court, in Sykes v. Director, OWCP, 812 F.2d 890 (4th Cir. 1987), altered the rebuttal

_____

[7] Harman thus appears to suggest that at the time of the initial hearing, the BRB had adopted identical standards for (b)(2) and (b)(3) rebuttal.

12

standard, holding that (b)(2) rebuttal is established only if the employer shows that a miner is not disabled due to any cause. On the first remand, the ALJ applied Sykes and found that Harman had not established (b)(2) rebuttal. (J.A. at 27 ("As Dr. O'Neill's opinion is restricted . . . to the lack of disability solely from a respiratory or pulmonary standpoint, it fails to establish rebuttal under § 727.203(b)(2) pursuant to Sykes . . . .").) Harman contends that by applying Sykes on remand but refusing to reopen the record for additional (b)(2) evidence, the ALJ violated the APA and due process. Specifically, Harman argues that the ALJ's refusal to reopen violated sections 554(b)(3) and 556(d) of the APA.

In Sykes, this court rejected the BRB's position that an employer may establish (b)(2) rebuttal by showing that a miner, while concededly totally disabled, is not disabled for pulmonary or respiratory reasons, finding such a position "contrary to the plain language of the statute" and "belied by the words of the regulation." See Sykes, 812 F.2d at 893. We stated:

> Section 727.203(b)(2) is concerned with the question of whether miners are totally disabled for whatever reason. There is no inquiry into causation in a proper § 727.203(b)(2) rebuttal. The reference in that subsection to § 410 merely clarifies the nature of "usual and comparable work"; it does not bring causation into question. Causation is addressed in § 727.203(b)(3). Once the miner's disability is conceded, then the question arises whether that disability is unrelated to mine work.

Id. at 893-94 (emphasis in original).

Section 554(b)(3) of the APA provides: "Persons entitled to notice of an agency hearing shall be timely informed of . .. the matters of fact and law asserted." 5 U.S.C. § 554(b)(3). Assuming arguendo that section 554(b)(3) applies to the case at hand and provides a basis for granting the relief requested, its requirements are satisfied where the party to the proceeding is "reasonably apprised of the issues in controversy[ ] and is not misled." Long v. Board of Governors of the Federal Reserve System, 117 F.3d 1145, 1158 (10th Cir. 1997) (quotation omitted). Here, the very regulation at issue provided Harman with

13

adequate notice of the applicable rebuttal standard. The regulation provides that in order to establish (b)(2) rebuttal, the employer must show "that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this title)." 20 C.F.R. § 727.203(b)(2). This text put Harman on notice that it could establish (b)(2) rebuttal by showing that Layne was not disabled. The BRB decisions holding that (b)(2) rebuttal could be established with the lesser showing that the miner was not disabled for pulmonary or respiratory reasons do not negate this fact. Significantly, Harman does not suggest that the BRB decisions held that the only way to establish (b)(2) rebuttal was to prove that the miner was not disabled for pulmonary or respiratory reasons or that those decisions rejected the notion that an employer could establish (b)(2) rebuttal by proving that the miner was not disabled for any reason. Notwithstanding the fact that the BRB decisions had not been reviewed by this court and were at odds with the regulation, see Sykes, 812 F.2d at 893 (holding that Board's position that (b)(2) rebuttal may be established with proof that miner is not totally disabled for pulmonary or respiratory reasons is "belied by the words of the regulation"), Harman chose to restrict its evidence to the lesser standard they sanctioned. That it chose to do so does not allow it to avoid the fact that it was on notice of the higher standard.

APA section 556(d) provides, in relevant part, that"[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). Harman was not prevented from presenting (b)(2) rebuttal evidence. As indicated above, instead of presenting evidence to meet the standard articulated in the regulation, Harman chose to rely on untested BRB decisions articulating a lesser standard. Harman, by its own volition, restricted presentation of (b)(2) rebuttal evidence to whether Layne was totally disabled by a pulmonary or respiratory impairment. Having made this choice, Harman cannot now complain that it was prevented from presenting (b)(2) rebuttal evidence.

We thus conclude that the ALJ's refusal to reopen the record for additional (b)(2) rebuttal evidence did not violate the requirements of

14

the APA or due process and was not an abuse of discretion.**8** Finally, we note that even if the ALJ had erred in refusing to reopen the record, remand would not be appropriate as Harman seems to have conceded that it cannot now establish (b)(2) rebuttal under <u>Sykes</u>. (<u>See</u> Reply at 21 ("It is certainly likely the rebuttal under Section 727.203(b)(2) will be unavailable under the <u>Sykes</u> standard <u>since Mr. Layne is unable to perform his usual coal mine employment duties in light of his heart disease.</u>") (emphasis added).)

III

For the reasons discussed above, the decision of the BRB affirming the ALJ is affirmed.

<u>AFFIRMED</u>

_____

**8** To the extent <u>Harlan Bell Coal Co. v. Lemar</u>, 904 F.2d 1042 (6th Cir. 1990) (finding "manifest injustice" and a due process violation in the agency's refusal to reopen the record for additional (b)(2) evidence after the (b)(2) standard changed), could be thought to lay down a flat requirement for reopening whenever there is an intervening change of law, we respectfully disagree. In fact, though Harman seems to rely upon it for such a flat rule, we doubt that it was so intended.

15