The YOUGHIOGHENY & OHIO COAL COMPANY, Petitioner,

v.

Wayne N. McANGUES and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 92–3765.

United States Court of Appeals, Sixth Circuit.

Argued May 4, 1993.

Decided June 15, 1993.

John G. Paleudis (argued and briefed), Hanlon, Duff & Paleudis, St. Clairsville, OH, for petitioner.

Edmund A. Sargus, Jr. (argued and briefed), Burech & Associates, St. Clairsville, OH, and Donald S. Shire, Assoc. Sol., Christian P. Barber (argued and briefed) and J. Matthew McCracken, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for respondents.

Before: MILBURN, RYAN, and NORRIS, Circuit Judges.

RYAN, Circuit Judge.

The Youghiogheny & Ohio Coal Company appeals from the decision awarding benefits to claimant Wayne McAngues under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* Y & O contends that it rebutted the regulatory interim presumption of total coal-related pulmonary disability when it showed that McAngues suffered disabling non-respiratory injuries in an automobile accident. We affirm, however, because substantial evidence supports a finding of total coal-related pulmonary disability, and because we conclude that an employer's demonstration of a separate, non-respiratory disabling condition is irrelevant to a rebuttal of the presumption.

## I.

Wayne McAngues had worked as an underground coal miner for Y & O for eleven years when he was involved in an automobile accident on May 4, 1976, in which he sustained serious head injuries. After being comatose for two weeks, McAngues recuperated to the point where today, he retains some disturbance of his balance and equilibrium, as well as possible brain damage which causes hemiparesis, or muscular weakness, on the right side of his body. After the accident, McAngues never worked again as a coal miner.

McAngues first applied for black lung benefits in April 1978. He was twice awarded benefits by the ALJ only to have his case remanded by the Benefits Review Board.[1] In 1990, however, the ALJ issued a second supplemental decision and order on second remand, again awarding McAngues benefits, and this award was affirmed by the Board. It is from that decision that Y & O appeals.

In reaching his decision, the ALJ largely focused on evidence from two different doctors—one hired by the employer, and one hired by the claimant. The latter concluded that McAngues was disabled due to pneumoconiosis resulting from his former employment as a coal miner, while the former believed that McAngues's total disability was entirely attributable to his car accident.

Dr. George Kress was the employer's expert witness. He examined McAngues in 1979, and made the following conclusions:

Ventilatory pulmonary function studies were done. His forced vital capacity was 4.17, 107% of predicted normal. FEV1 was 3.2, 110% of predicted and 77% of the actual vital capacity. Maximum voluntary ventilation, the best determination we could get, was 75.6 liters per minute or 60% of predicted.[2] It was my feeling in watching him perform this test that we did not get maximum effort and I believe in view of the normal vital capacity and FEV1 that this observation is confirmed. I would not, therefore, consider the maximum voluntary ventilation valid and it is my opinion that he has no ventilatory impairment.

(Footnote added.) Dr. Kress's view was that McAngues

does demonstrate evidence of coal workers' pneumoconiosis, occupationally acquired, but he does not present with any evidence to indicate any disability or impairment as a result of this pneumoconiosis and his former coal mine employment. I do believe he is disabled but this disability is due entirely to residuals from a severe head injury sustained in an auto accident.

Dr. Jon Tipton was the claimant's expert witness, and he examined McAngues in January 1982. His report following that examination details McAngues's history of working in the mines. Within a year of working, McAngues began to note shortness of breath, and began to cough excessively and expectorate gray and black mucus. Within five years, McAngues was short of breath on climbing one flight of stairs. And by eleven years, he was short of breath on climbing less than one flight. At the time of the 1982 examination, McAngues could walk no more than a block and a half.

Dr. Tipton made the following conclusions regarding McAngues's lungs:

Ventilatory studies demonstrate a FEV1 of 1.61 liters with a maximum voluntary ventilation recorded at 36 liters. The forced vital capacity was 2.64 liters. . . . The PO2 is 74.8 with the PCO2 of 30.7. The PH is 7.445. This is at room air. Chest x-ray demonstrates evidence of fine nodular den-

---

**1.** In the ALJ's first decision, he invoked, based on chest x-ray evidence, a regulatory "interim presumption" of total disability due to pneumoconiosis, and also concluded that the employer's evidence failed to rebut that presumption. The Board vacated and remanded for further consideration of whether rebuttal was established. The ALJ then relied on the opinion of the claimant's expert, crediting his findings over that of the employer's expert, and again concluded that rebuttal was not established. The Board remanded again, this time because it found the ALJ had not provided an adequate rationale for discrediting the opinion of the employer's expert, and because the ALJ had not discussed McAngues's car accident.

**2.** Under 20 C.F.R. § 727.203(a)(2), a man of McAngues's height (67 inches) is disabled with an FEV1 value of 2.3 and an MVV value of 92.

sities in both lungs, most probably on the basis of pneumoconiosis.

Thus, Mr. McAngues has developed simple coal workers pneumoconiosis in association with the severe chronic obstructive pulmonary disease. Obviously, the coal workers pneumoconiosis is consequence of his prolonged coal mine exposure. Based on the studies and the history and the examination, it is my opinion that Mr. McAngues is disabled regarding gainful coal mine employment.

Dr. Kress reviewed Dr. Tipton's findings, and disagreed with the results. He believed that McAngues's deterioration between 1979 and 1982 "far exceed[ed] what is recognized as can be expected in the natural progression of chronic obstructive pulmonary disease." This led him to "suspect that [McAngues] must have had a respiratory infection at the time of Dr. Tipton's examination." McAngues testified, however, that he did not have a cold on the day he was examined by Dr. Tipton, and Dr. Tipton made no findings that would indicate McAngues had a cold or other acute, as opposed to chronic, respiratory infection.

The ALJ credited Dr. Tipton's opinion over that of Dr. Kress, primarily because Dr. Tipton reached his very specific conclusions immediately after examining McAngues, while Dr. Kress's more general 1982 conclusions were based largely on speculation. In addition, the ALJ noted that Dr. Tipton's findings of disability were supported by the 1982 ventilatory test results. The ALJ thus concluded that Y & O had not rebutted the presumption that McAngues was totally disabled due to pneumoconiosis.

I accept Dr. Tipton's conclusions over those of Dr. Kress and find that the Claimant has a totally disabling pulmonary impairment caused by his pneumoconiosis.... As the Board stated in its decision, the Employer must prove that pneumoconiosis played no part in causing the miner's disability to establish (b)(3) rebuttal. So that even if the Employer had been able to establish that the Claimant's pneumoconiosis was less than totally disabling, within the meaning of the Act, he could not establish rebuttal unless he proved that it made no contribution to his disability.

The ALJ also considered McAngues's medical records from the period following his car accident, and concluded that they did not support an inference that the accident caused any pulmonary impairment.

The Board affirmed this decision, finding that the ALJ's findings of fact and conclusions of law were supported by substantial evidence, were rational, and were consistent with applicable law. It held that the ALJ properly accorded Dr. Tipton's opinion greater weight, and it refused to substitute its own inference for the ALJ's inference that Dr. Tipton's opinion supported a finding that McAngues was totally disabled due to pneumoconiosis. It also held that the ALJ properly accorded little weight to the records regarding McAngues's car accident, and that it was irrelevant whether McAngues was totally disabled as a result of his 1976 accident.

## II.

### A.

█ Y & O contends that because the evidence demonstrates that McAngues is totally disabled due to his 1976 car accident, pneumoconiosis simply cannot be a contributing, or necessary, cause of his total disability. Y & O further suggests that the ALJ failed to adequately discuss the relative roles that pneumoconiosis and the car accident played in McAngues's total disability.

As we have already mentioned, McAngues was determined to be entitled to the benefit of an interim presumption of disability due to coal-related pneumoconiosis based on x-ray evidence. 20 C.F.R. §§ 727.203(a) & (a)(1). Y & O does not dispute McAngues's entitlement to the presumption, but it raises several arguments as to why it should be held to have rebutted the presumption under 20 C.F.R. § 727.203(b)(3). Once the interim presumption is established, the burdens of production and persuasion shift to the employer to demonstrate rebuttal. *Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1120 (6th Cir.1984), *cert. denied*, 471 U.S. 1116, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985). The

regulation relating to rebuttal reads as follows:

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

. . . .

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment . . . [.]

20 C.F.R. §§ 727.203(b) & (b)(3).

This court has not directly addressed the issue presented by this case, whether an independent, totally disabling condition that predates the existence of a pulmonary disability establishes rebuttal under section (b)(3).[3] We have, however, considered the standard for section (b)(3) rebuttal in other contexts on several occasions. We understand these cases to mean that so long as McAngues demonstrates that his total disability arose, at least partially, from coal-related pneumoconiosis, the existence of disabling effects from the auto accident is immaterial. Put another way, if pneumoconiosis at least partially contributes to his total disability, he is entitled to recover benefits. *See, e.g., York v. Benefits Review Bd.,* 819 F.2d 134, 137 (6th Cir.1987); *Gibas,* 748 F.2d at 1120.

Y & O suggests that the "contributing cause" doctrine formulated in two cases from other circuits, *Shelton v. Director, OWCP,* 899 F.2d 690 (7th Cir.1990), and *Robinson v. Pickands Mather & Co.,* 914 F.2d 35 (4th Cir.1990), reflects the reasoning that once an employer proves total disability due to something other than coal-related pulmonary disability, it has, under section (b)(3), rebutted the interim presumption. Y & O points, in particular, to the following language:

A miner is not entitled to benefits if by reason of his heavy smoking or some other activity or condition of his that is not itself mining, he would have become totally disabled (and no later than he did) even if he

had never gone near a coal mine. To award benefits in such a case would be to confer a pure windfall, since by assumption the miner was no worse off by virtue of working in a mine than he would have been had he been working in an oxygen factory. The Black Lung Benefits Act is generous, but not that generous. It is not a welfare program for cigarette smokers.

*Shelton,* 899 F.2d at 693; *see also Robinson,* 914 F.2d at 37–38. Both *Shelton* and *Robinson* dealt with situations in which a miner had been shown to be totally disabled due to pulmonary disease, but the evidence failed to definitively show the relative weights that smoking and coal-mining bore in causing the pulmonary disability. The considerations in such cases are quite different than in this case, where both parties have arguably demonstrated the existence of two totally disabling, though entirely unrelated, conditions. This case does not require resolution of the possible synergistic effects of two activities that are harmful to the lungs, such as smoking and coal-mining. Y & O, in fact, does not dispute that McAngues's lung disability relates solely to coal-mining.

We therefore do not read *Shelton* and *Robinson* to suggest that, in this case, McAngues's preexisting independent disability must rebut the presumption of disability resulting from coal-related pulmonary disability. Such a conclusion would result in a conflict with the existing Sixth Circuit case law to which we have already referred. We instead adopt the reasoning of the Tenth Circuit in this area, in which the court explicitly foreclosed the argument suggested by Y & O:

Twin Pines argues that because White was already completely disabled by the 1970 accident he cannot now be considered disabled as a result of pneumoconiosis; that is, a person can only be completely disabled once.

. . . [A] review of the cases, the statute, its legislative history, and its interpretation by the benefits review board . . . shows that *the statute is intended to confer spe-*

---

**3.** Because we find the car accident irrelevant to the question of rebuttal, we do not find it necessary to decide the question whether, as Y & O argues, the car accident resulted in total disability for McAngues.

*cial benefits on miners who are disabled due to pneumoconiosis whether or not they are disabled from a different cause.* Even when other causes are themselves independently disabling "[t]he concurrence of two sufficient disabling medical causes - one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act." *Peabody Coal Co. v. Director, OWCP,* 778 F.2d 358, 363 (7th Cir.1985)[.] [4] . . .

*Twin Pines Coal Co. v. United States Dep't of Labor,* 854 F.2d 1212, 1215 (10th Cir.1988) (emphasis added) (footnote added) and (citations omitted).

■ We thus reject Y & O's argument that an employer establishes rebuttal if it can demonstrate a total disability that predates a claimant's total disability from pneumoconiosis. If a claimant proves that he is totally disabled, and further, that the disability is at least partially the result of coal-related pneumoconiosis, then he is entitled to benefits under the Act. An employer cannot rebut the presumption of total disability by showing a second disability that is entirely independent of a claimant's disabling pneumoconiosis.

■ We likewise reject Y & O's suggestion that the ALJ did not adequately discuss the role the car accident played in McAngues's disability. The ALJ's conclusion is perfectly clear: McAngues is totally disabled due to coal-related pneumoconiosis. There is, also, evidence in the record that McAngues is disabled due to the 1976 car accident. The ALJ did not make a clear conclusion on that issue—but there can be no reasonable doubt that he did firmly conclude that McAngues's pneumoconiosis would have left him totally disabled even in the absence of the car accident.

### B.

We next address Y & O's contention that the ALJ's finding of total pulmonary disability is not supported by substantial evidence.

Y & O argues that in rejecting Dr. Kress's conclusion that McAngues's apparent respi-

ratory deterioration between 1979 and 1982 was too rapid to be the result of pneumoconiosis, the ALJ improperly placed his own expertise against that of the doctor, and that more credence should have been given to Dr. Kress's suggestion that McAngues was suffering from a cold at his 1982 examination. Y & O also argues that Dr. Tipton did not conclude that McAngues was disabled because of pneumoconiosis; it contends that Dr. Tipton's letter as a whole indicates that he viewed the car accident as the cause of the total disability.

■ This court reviews decisions below only to decide whether they are supported by substantial evidence and in accordance with the applicable law. *Kolesar v. Youghiogheny & Ohio Coal Co.,* 760 F.2d 728, 729 (6th Cir.1985) (per curiam). Review on appeal should focus on whether the ALJ—not the Board—had substantial evidence on which to base its decision. *Zimmerman v. Director, OWCP,* 871 F.2d 564, 566 (6th Cir.1989).

■ Given this limited scope of review, this court cannot substitute its own judgment for that of the ALJ, so long as the ALJ has carefully considered each part of the evidence. *Knuckles v. Director, OWCP,* 869 F.2d 996, 998 (6th Cir.1989). Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Ramey v. Kentland Elkhorn Coal Corp.,* 755 F.2d 485, 488 (6th Cir.1985). In deciding whether a decision meets the "substantial evidence" requirement, this court may consider whether an ALJ adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record. *Director, OWCP v. Congleton,* 743 F.2d 428, 430 (6th Cir.1984).

■ Contrary to Y & O's suggestion, it is perfectly apparent that the ALJ did not simply reject Dr. Kress's opinion in favor of his personal medical beliefs. Instead, he compared two competing medical opinions and rejected one in favor of the other, and gave adequate reasons for doing so. None of Y & O's specific arguments—that the ALJ should have given more credence to Dr. Kress's belief that McAngues had a cold, and that

---

**4.** The Seventh Circuit has cautioned that *Shelton* does not overrule this holding of *Peabody. Haw-* *kins v. Director, OWCP,* 907 F.2d 697, 704 n. 11 (7th Cir.1990).

the ALJ should have viewed Dr. Tipton's reference to "history" as a reference to McAngues's car accident—provides any significant challenge to the ALJ's conclusion. Dr. Tipton's opinion, supplemented with the objective test results, constitute substantial evidence that more than adequately supports the ALJ's conclusion.

## C.

■ Y & O finally argues that the pulmonary function study relied on by Dr. Tipton did not state the paper speed for the test, and that the study is therefore invalid under 20 C.F.R. § 718.103(b)(6), which requires that the paper speed, *inter alia*, be stated for every test. Yet another regulation, however, limits the applicability of section 718.103 to evidence offered to *establish* a presumption. 20 C.F.R. § 727.206. No regulation speaks to the applicability of the requirements of section 718.103 in the case of *rebutting* a presumption. *See Saginaw Mining Co. v. Ferda,* 879 F.2d 198, 205–06 (6th Cir.1989). The test's failure to comply with section 718.-103 is therefore simply not a basis for reversal in this case.

## III.

For the reasons discussed above, we **AFFIRM**.