65 F.3d 169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
The YOUGHIOGHENY AND OHIO COAL COMPANY, Petitioner,
v.
John SELAK, Respondent,
and
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party in Interest.
 No. 93-4370.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1995.
 
 Before: NORRIS and DAUGHTREY, Circuit Judges, and FEIKENS, District Judge.*
 PER CURIAM.
 
 
 1
 The Youghiogheny and Ohio Coal Company appeals the decision of the Benefits Review Board affirming the administrative law judge's award of benefits under the Black Lung Act to John Selak, a longtime coal mine worker. The Y & O advances several arguments. First, it urges that a letter from the Department of Labor to Selak, requesting submission of further evidence for the file and notifying Selak that failure to submit such evidence would mean that the Department would rule on the file as it then existed, constituted a denial of benefits. Next, the Y & O argues that the interim presumption of disability was erroneously invoked. Finally, the Y & O maintains that it met its burden of proof in rebutting the presumption of disability under various provisions of the applicable regulations. Because we conclude that the administrative law judge applied the appropriate standards and based his decision to award benefits on substantial evidence, we affirm the Board's award of benefits.
 
 1. Factual Background
 
 2
 Selak, now almost 80, worked at the Y & O as an underground coal miner from 1933 through 1977. In 1972, Selak was injured in the course of his coal mine work, when he was struck on the head; he has since experienced periodic blackouts. Two physicians have found Selak permanently and totally disabled due to his blackouts.
 
 
 3
 In addition to this neurological impairment, Selak shows evidence of pulmonary impairments,[1] apparently due to his many years of coal mine work. At least 12 x-rays were submitted to the administrative law judge, each of which purported to demonstrate that Selak did or did not have pneumoconiosis.
 
 
 4
 Several pulmonary-function studies have been performed on Selak.[2] Dr. Paal conducted a pulmonary-function study of Selak in December 1977 for the Department of Labor; this study clearly does not support invocation of the (a)(2) presumption. An April 1978 study by Dr. Kress yielded very low results, well within the qualifying range. A November 1979 study by Dr. Knies showed a higher, but still qualifying, performance, as did an October 1980 study by Dr. Daneshvari. A second study by Dr. Kress in February 1981 placed Selak at the upper end of the (a)(2) qualifying range. In this latter study, Dr. Kress noted that Selak did not apply maximum effort in exhalation, which is necessary for valid test results. Dr. Kress, the only physician who examined all of Selak's medical records, noted the broad discrepancies in Selak's test results. Dr. Kress ultimately opined that Selak suffered from a mild, early moderate degree of obstructive impairment, but concluded that the pulmonary function studies showed no progressive deterioration from any pulmonary disease, particularly pneumoconiosis.
 
 
 5
 Six arterial blood-gas studies were submitted into evidence, dated April 1978, June 1978, November 1979, July 1980, October 1980, and February 1981. Of these, only the resting portion of the July 1980 study was sufficient to invoke the (a)(3) presumption.
 
 
 6
 Prior to 1977, no doctor had diagnosed Selak as having pneumoconiosis. In December 1977, however, Dr. Paal found a mild degree of non-disabling pneumoconiosis. In 1978, Dr. Kress diagnosed some lung impairment due to diffusion impairment from mild interstral thickening that was possibly related to Selak's years of coal mining experience despite the absence of changes observable by x-ray. He indicated that Selak was disabled due to the blackout spells.
 
 
 7
 In 1978, Dr. Prior found no pneumoconiosis, but did find non-occupational chronic obstructive lung disease. In 1980, Dr. Davies reviewed Selak's file and agreed with Dr. Prior's assessment. In July 1980, Dr. Hillberg, who performed no x-rays or pulmonary function studies, was unable to determine the presence of pulmonary disease. In October 1980, Dr. Daneshvari diagnosed "mild simple coal workers' pneumoconiosis" on the basis of an x-ray reading, as well as moderate chronic bronchitis as shown by pulmonary function studies. Dr. Daneshvari concluded that Selak was totally and permanently disabled due to chronic pulmonary obstructive disease and the blackouts. In 1981, Dr. Kress found a mild obstructive impairment and early radiographic evidence of pneumoconiosis. Dr. Kress found Selak totally disabled due, not to the respiratory ailments, but to the blackouts. In 1983, Dr. Kress reviewed Dr. Daneshvari's report and agreed that Selak has mild pneumoconiosis and may have some additional obstructive impairment. He again agreed that Selak is disabled, but indicated that the pneumoconiosis and other respiratory conditions were not totally disabling.
 
 2. Procedural History
 
 8
 Selak first applied for benefits in September 1977. In December 1979 (over two years later), the Deputy Commissioner notified Selak by letter that the evidence then on file was insufficient for approval of his black lung claim. The letter requested that Selak submit further evidence within 30 days and advised that, otherwise, a decision would be made based on the evidence then in the file.
 
 
 9
 On February 1980, Selak's newly acquired counsel requested copies of the evidence and submitted further evidence in support of Selak's claim. The employer also submitted evidence. Based on this file, the Director of Labor approved the claim in March 1981.
 
 
 10
 In March 1981, the Y & O requested a hearing before an administrative law judge. A hearing was held in April 1983, and in March 1984, the administrative law judge awarded benefits to Selak. The administrative law judge rejected the employer's suggestion that Selak's failure to respond within 30 days to the Deputy Commissioner's letter necessitated denial of his claim and ruled on the merits. The judge invoked the interim presumption based on pulmonary-function studies and arterial blood-gas studies. See Sec. 727.203(a)(2) and (a)(3). He then concluded that the presumption was not rebutted under any of the Sec. 727.203(b) standards.[3] The Y & O appealed this order to the Benefits Review Board.
 
 
 11
 In May 1986, the Board affirmed the administrative law judge's determination that the deputy commissioner's letter was not a denial of benefits. The Board also upheld the constitutionality of the regulations involving the interim presumption and rebuttal provisions. However, the Board vacated the award and remanded the case to the administrative law judge with instructions to weigh each item of the evidence under Sec. 727.203(a)(2), (a)(3), (b)(2), (b)(3), and (b)(4).
 
 
 12
 On remand, the administrative law judge invoked the interim presumption under subsection (a)(2), based on an October 1980 pulmonary function study by Dr. Daneshvari.[4] The administrative law judge found that the weight of the physicians' reports was insufficient to support (b)(3) rebuttal because neither Dr. Kress, Dr. Paal, nor Dr. Daneshvari ruled out a relationship between Selak's pulmonary problems and his coal mine work. The administrative law judge also found no (b)(4) rebuttal, given that Drs. Paal, Kress and Daneshvari all diagnosed the existence of pneumoconiosis. However, the administrative law judge found sufficient evidence to support rebuttal under subsection (b)(2), and denied the claim. Selak appealed to the Benefits Review Board.
 
 
 13
 In July 1989, the Board affirmed the administrative law judge's (a)(2) finding. The Board then held that (b)(2) rebuttal was precluded as a matter of law, based on this court's ruling in York v. Benefits Rev. Bd., 819 F.2d 134, 137 (6th Cir.1987) (holding that (b)(2) rebuttal is established if, considering all the miner's physical impairments, he is able to perform his usual coal mine work or the equivalent) and based on the fact that every physician had found Selak "totally disabled." The Board affirmed the administrative law judge's finding that (b)(3) rebuttal was not established. However, the Board remanded the claim for further consideration of the chest x-rays and physicians' reports under subsection (b)(4).
 
 
 14
 On remand this time, the administrative law judge credited the opinions of pneumoconiosis by Drs. Paal, Daneshvari, and Kress over the contradictory opinion by Dr. Prior and the negative x-ray readings by the "B-readers". He therefore concluded that the interim presumption was not rebutted under subsection (b)(4) and awarded benefits.
 
 
 15
 The Y & O again appealed to the Benefits Review Board. In November 1993, the Board affirmed the administrative law judge's award of benefits. The Board relied on "the law of the case" doctrine, and declined to entertain the employer's challenge to the administrative law judge's findings under subsections (a)(2), (b)(2) and (b)(3). The Board addressed and rejected the Y & O's assignments of error under subsection (b)(4).
 
 3. Analysis
 
 16
 In Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990), we outlined the standard of review in black lung cases:
 
 
 17
 Our scope of review in appeals from the Benefits Review Board is narrow. The administrative law judge hears the evidence and makes the findings of fact. The Board itself on review may only set aside an administrative law judge's findings of fact and conclusions of law if they are not supported by substantial evidence in the record considered as a whole or if they are not in accordance with law. Pyro Mining Co. v. Slaton, 879 F.2d 187 (6th Cir.1989); 20 C.F.R. Sec. 802.301(a). This Circuit has repeatedly ruled that we must affirm the Board's decision if the Board has not committed any legal errors or exceeded its statutory scope of review of the administrative law judge's factual determinations. See, e.g., Pyro Mining Co. v. Slaton, supra.
 
 
 18
 The employer argues first that Selak's failure to submit additional evidence within 30 days required the Director to proceed to rule on the claim on the basis of the then-existing file, necessitating a denial. The Director obviously rejected this interpretation, as have the administrative law judge and the Benefits Review Board.
 
 
 19
 We likewise conclude that the Director's letter was simply a request that Selak supplement his file. Clearly, the Director was entitled to deny the claim based on the information then in the file. However, the letter did not require that the Director then deny Selak's claim.
 
 
 20
 The employer next argues that the evidence it submitted regarding (a)(2) invocation was never addressed before the presumption was invoked. The Y & O notes that only three of the pulmonary function studies could be considered, because the others did not have tracings. The first, by Dr. Paal, is undisputedly not qualifying. The Y & O complains that, while the other two studies (one by Dr. Daneshvari and one by Dr. Kress) were qualifying, Dr. Kress questioned whether the reported values reflected Selak's true capacity.
 
 
 21
 The employer's argument is essentially an attack on the administrative law judge's evaluation of the evidence. Two of the three studies he considered supported invocation. Hence, there is substantial evidence to support the administrative law judge's determination. "When the question is whether the administrative law judge reached the correct result after weighing conflicting medical evidence, 'our scope of review ... is exceedingly narrow. Absent an error of law, findings of facts and conclusions flowing therefrom must be affirmed if supported by substantial evidence.' " Consolidation Coal Co. v. Worrell, 27 F.3d 227, 230-31 (6th Cir.1994) (per curiam). We therefore sustain the administrative law judge's finding of (a)(2) invocation.
 
 
 22
 The Y & O next urges that it established (b)(2) rebuttal of the interim presumption. In York v. Benefits Rev. Bd., 819 F.2d 134 (6th Cir.1987), we held that to establish rebuttal under Sec. 727.203(b)(2), the party opposing entitlement must prove that the miner is "able to do his usual coal mine work or comparable and gainful work." 819 F.2d at 137. Thus, evidence that the miner is not totally disabled by his respiratory ailment alone is no longer sufficient to rebut the interim presumption under that provision. Id.
 
 
 23
 The Y & O does not contest the applicability of York, but instead argues that the Court's interpretation of subsection (b)(2) is unconstitutional, because it goes beyond the scope of the enabling legislation. The Y & O points out that 30 U.S.C. Sec. 901 describes the purpose of the Black Lung Act as providing benefits "to coal miners who are totally disabled due to pneumoconiosis." Thus, they argue, where disability is due to another cause, the Act does not apply.
 
 
 24
 Unfortunately for the employer, these arguments are unavailing, because York is clearly binding absent a superseding Supreme Court decision or a ruling by this court sitting en banc. Youghiogheny & Ohio Coal Company v. Webb, 49 F.3d 244, 249 (6th Cir.1995).
 
 
 25
 We also reject the Y & O's contention that the administrative law judge erred in finding insufficient evidence to establish (b)(3) rebuttal. This subsection provides for rebuttal of the interim presumption if "[t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. Sec. 727.203(b)(3). The employer bears the burden of proving rebuttal. Youghiogheny & Ohio Coal Co. v. McAngues, 996 F.2d 130, 133 (6th Cir.1993), cert. denied, 114 S.Ct. 683 (1994). If pneumoconiosis is at least a contributing cause of a miner's total disability, he is conclusively entitled to benefits, Webb, supra, at 250, even if the employer shows a second disability that is entirely independent of the claimant's disabling pneumoconiosis. McAngues, at 135. Because the Y & O cannot demonstrate that pneumoconiosis played no part in Selak's disability, we must uphold the administrative law judge's determination on this issue.
 
 
 26
 The Y & O next asserts that the administrative law judge's finding that (b)(4) rebuttal was not established is not supported by the record or by relevant case law. Subsection (b)(4) allows the employer to rebut the interim presumption by proving that the miner does not have, and has not had, pneumoconiosis. The administrative law judge, in rejecting (b)(4) rebuttal, cited Dr. Daneshvari's opinion that Selak did have pneumoconiosis. The Y & O argues that this reliance was error.
 
 
 27
 First, the Y & O contends that pneumoconiosis is always a restrictive disease, as opposed to an obstructive disease. It suggests, therefore, that Dr. Daneshvari's opinion that Selak has "chronic obstructive lung disease ... related to his exposure to the coal dust" is not a diagnosis of statutory pneumoconiosis. However, 30 U.S.C. Sec. 902(b) defines pneumoconiosis as "a chronic dust disease of the lung and its sequalae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. Sec. 727.202 expands upon this definition:
 
 
 28
 For the purposes of the act, pneumoconiosis means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthro-silicosis, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.
 
 
 29
 Neither the statute nor the regulation precludes coverage of an obstructive impairment. Both Dr. Kress and Dr. Daneshvari related Selak's obstructive impairment to his coal mine work. We conclude that Selak's impairment fell within the statutory and regulatory definitions.
 
 
 30
 The Y & O also alleges that the administrative law judge erred in applying the later-evidence rule, by which he discredited the opinions of Drs. Davies and Prior in favor of those of Drs. Kress and Daneshvari concerning the cause of Selak's lung disease under subsection (b)(4).[5] There may have been error in such application of the later-evidence rule. See Woodward v. Director, OWCP, 991 F.2d 314, 319-20 (6th Cir.1993). However, the judge also gave other, valid reasons for weighting Dr. Kress's opinion more heavily.[6] We find that any error in the administrative law judge's application of the later-evidence rule in this case was harmless.
 
 
 31
 The Y & O then asserts (despite conceding that Dr. Kress was unable to rule out a causal relationship between Selak's chronic bronchitis and his coal mine employment) that the physician's opinion "is not substantial evidence supporting a positive fact finding by the administrative law judge of legal pneumoconiosis outweighing the admittedly negative x-ray evidence." Essentially, the Y & O argues that under subsection (b)(4), once the employer shows that a miner does not have clinical pneumoconiosis, the burden of proof shifts to the miner to establish the presence of statutory pneumoconiosis. This ignores the entire "interim presumption" scheme, however. To establish (b)(4) rebuttal, the employer must rule out both clinical and legal pneumoconiosis. See Campbell v. Consolidation Coal Co., 811 F.2d 302, 304 (6th Cir.1987); McAngues, supra, 996 F.2d at 133.
 
 
 32
 Lastly, the Y & O alleges error in the administrative law judge's failure to determine whether Dr. Daneshvari's diagnosis--of a pulmonary condition related to coal mine employment--was adequately documented so as to constitute credible evidence of pneumoconiosis. See Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir.1983). The administrative law judge did fail to make such a determination, but the judge's decision as a whole was based on Dr. Kress's opinion above that of any other physician.
 
 
 33
 We conclude that the Y & O has, simply, failed to demonstrate that the administrative law judge's rejection of (b)(4) rebuttal was not supported by substantial evidence or was contrary to law.
 
 
 34
 For the reasons stated above, we AFFIRM the Board's award of benefits.
 
 
 
 *
 The Hon. John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 20 C.F.R. Sec. 727 establishes an "interim presumption" that a miner is totally disabled due to pneumoconiosis where a miner has been engaged in coal mine work for at least 10 years and meets one of the following medical requirements: (1) a chest x-ray, biopsy, or an autopsy establishes the existence of pneumoconiosis; (2) ventilatory studies establish the presence of a chronic respiratory or pulmonary disease, under certain specified tables; (3) blood gas studies show an impairment in the transfer of oxygen from lung to blood, under certain specified tables; (4) a physician otherwise documents a totally disabling respiratory or pulmonary impairment. See 20 C.F.R. Sec. 727.203(a). Any one of these is sufficient to invoke the interim presumption. The claimant bears the burden of proof for establishing criteria sufficient to invoke the interim presumption
 
 
 [2]
 In order to trigger the (a)(2) presumption, the regulations set forth certain levels of ventilatory performance, as evaluated by "pulmonary function studies", which an applicant may not exceed if he is to qualify for benefits
 
 
 [4]
 This interim presumption may be rebutted by the party opposing entitlement, under certain provision set forth in Sec. 727.203(b). The burden of proving any of these rebuttal conditions is on the employer or party seeking a denial of benefits. Under Sec. 727.203(b)(1), the interim presumption is rebutted where the evidence establishes that the claimant is, in fact, doing his usual coal mine work or comparable and gainful work. Under 727.203(b)(2), the interim presumption is rebutted where the evidence establishes that the claimant is able to do his usual coal mine work or comparable and gainful work. Under 727.203(b)(3), the interim presumption is rebutted where the evidence establishes that the claimant's disability did not arise in whole or in part out of the claimant's coal mine employment. Under 727.203(b)(4), the interim presumption is rebutted where the evidence establishes that the claimant does not have pneumoconiosis
 However, the judge discounted a February 1981 study by Dr. Kress because he found Dr. Kress' assessment of Selak's effort, cooperation, and comprehension "equivocal".
 
 
 [5]
 Actually, the judge discredited Dr. Davies' opinion primarily on the ground that the physician did not examine Selak
 
 
 [6]
 The judge noted Dr. Kress's qualification as a "pulmonary specialist" and the fact that "he had the opportunity to review all the evidence developed in the record and was able to render an opinion based on a more complete picture of the Claimant's health."