89 F.3d 835
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TENNESSEE CONSOLIDATED COAL COMPANY, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 95-3607.
 United States Court of Appeals, Sixth Circuit.
 June 6, 1996.
 
 Before: MARTIN, JONES, and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Tennessee Consolidated Coal Company petitions this Court for review of the Benefits Review Board's award of benefits to Ray L. Green pursuant to the Black Lung Benefits Act, 30 U.S.C. §§ 901-45. For the reasons set forth below, we REMAND.
 
 
 2
 Ray Green filed an application for black lung benefits under 20 C.F.R. § 718, of the regulations promulgated pursuant to the Black Lung Benefits Act on September 24, 1992. On June 27, 1994, a formal hearing was held before the administrative law judge in order to determine whether Green qualified for benefits under the Act. The administrative law judge issued an order awarding benefits on August 30. The Benefits Review Board subsequently affirmed the administrative law judge's decision. Tennessee Consolidated timely filed the instant appeal.
 
 
 3
 In order to qualify for benefits under the Black Lung Benefits Act, an applicant must establish that: 1) he suffers from pneumoconiosis; 2) his pneumoconiosis arose at least in part out of his coal mine employment; and 3) he is totally disabled by pneumoconiosis. Adams v. Director, OWCP, 886 F.2d 818, 820 (6th Cir.1989) (citing 20 C.F.R. §§ 718.2, 718.202, 718.203, 718.204). The claimant bears the burden of establishing each of the elements of his claim. Id. Under section 413(b) of the Act, 30 U.S.C. § 923(b), and C.F.R. § 718.401, the Department of Labor is required to provide initial assistance to each claimant in harnessing evidence to support his claim. Section 718.401 provides:
 
 
 4
 [The Department of Labor] shall assist each claimant in obtaining the evidence, including medical evidence, necessary for a complete adjudication of the claim. In each case of a miner's claim, initial medical test and examinations shall be arranged for the miner by [the Department of Labor], at no cost to the miner.
 
 
 5
 At issue in this case is the adequacy of the medical report provided by the physician acting on behalf of the Department of Labor to assist Green in his claim for benefits.
 
 
 6
 Pursuant to § 718.202(a)(1)-(4) of the regulations, a claimant may establish pneumoconiosis by one of four methods: 1) on the basis of x-ray evidence; 2) biopsy or autopsy evidence; 3) on the basis of particular presumptions; or 4) through medical opinion evidence. The administrative law judge found that pneumoconiosis was established in this case under § 718.202(a)(4), which allows proof of the condition by medical opinion. The bulk of Tennessee Consolidated's appeal centers around the alleged insufficiency of the medical opinion evidence presented to the administrative law judge at Green's benefits hearing.
 
 
 7
 With regard to the first method of establishing pneumoconiosis, the record before the administrative law judge contained two readings of a chest x-ray performed on Mr. Green. Dr. Soteres, the physician provided by the Department of Labor, read the x-ray as "0/1" and interpreted it as showing "borderline coal worker's pneumoconiosis." A board-certified "B-reader"[1] and radiologist, Dr. Nicholas Sargent, reread the x-ray as negative for pneumoconiosis. Pursuant to 20 C.F.R. § 718.102(b), Dr. Soteres' reading of "0/1" does not constitute evidence of pneumoconiosis. Accordingly, the administrative law judge found that Green had not established the existence of pneumoconiosis pursuant to Section 718.202(a)(1).
 
 
 8
 As to the second method, which requires biopsy or autopsy evidence, the administrative law judge noted that no biopsy had been performed and that 718.202(a)(2) was therefore inapplicable. In addition, the administrative law judge held that none of the presumptions applicable under section 718.202(a)(3) were applicable to Mr. Green.
 
 
 9
 Accordingly, the administrative law judge turned to section 718.202(a)(4) to determine whether Green had established the existence of pneumoconiosis. That section provides:
 
 
 10
 A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative x-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in Section 718.201. Any such finding shall be based on objective medical evidence such as the blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.
 
 
 11
 Dr. Soteres' report was the only medical report before the administrative law judge. Dr. Soteres examined Green on November 4, 1992 and reported his opinion that Green suffers from coal worker's pneumoconiosis, arteriosclerotic heart disease, hypertension, possible angina, cardiovascular disease, restrictive lung disease, and moderate obesity. The report also noted Green's sixteen year history of coal mine employment and his twenty-seven year history of smoking. The evaluation included Dr. Soteres' conclusion that Green suffered from a restrictive lung defect, and symptoms of wheezing, sputum, dyspnea, chest pain, and paroxysmal nocturnal dyspnea.
 
 
 12
 On the basis of this report, the administrative law judge found that Green had established the existence of pneumoconiosis pursuant to section 718.202(a)(4), stating that the diagnosis was "considered to be well reasoned and documented." The administrative law judge also noted that there were no contrary physician's reports or conclusions included in the record. Among other things, Tennessee Consolidated claims that Dr. Soteres' report, which perhaps relied in part on his reading of the negative x-ray as indicating "borderline coal worker's pneumoconiosis," does not provide the basis for a finding of pneumoconiosis under § 718.202(a)(4).
 
 
 13
 In addition to finding that Green had established the existence of pneumoconiosis under § 718.202(a)(4), the administrative law judge found that Green's pneumoconiosis arose out of his coal mine employment through the application of the rebuttable presumption contained in section 718.203(b), which allows for the presumption to attach where a claimant was employed for more than ten years in the coal mines. Tennessee Consolidated does not take issue with the administrative law judge's application of this presumption, and did not attempt to rebut the presumption during the hearing before the administrative law judge.
 
 
 14
 Finally, the administrative law judge determined that Green's pneumoconiosis caused him to be totally disabled from performing his usual coal mine work, or other comparable work. 20 C.F.R. § 718.204(b). Sections 718.204(c)(1)-(5) set forth the criteria for determining whether a claimant is totally disabled. Sections 718.204(c)(1)-(3) provide that a claimant may establish total disability through specific medical tests. Green did not, however, qualify under these tests. Section 718.204(c)(5) applies to cases involving a deceased miner and is inapplicable. At issue here is section 718.204(c)(4), which provides:
 
 
 15
 Where total disability cannot be established under paragraphs (c)(1), (c)(2), or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b) of this section....
 
 
 16
 Dr. Soteres' report indicated his opinion that Green was twenty-five to fifty percent impaired from performing his previous coal mine job due to the pneumoconiosis. The administrative law judge concluded that this impairment, combined with the physical requirements of Green's last job as a coal mine inside foreman, rendered Green "physically unable to, and thus totally disabled from, performing the heavy physical requirements" of Green's last job. Tennessee Consolidated takes issue with these findings, claiming that the record was insufficient to find that Green was totally disabled, and that Dr. Soteres' report does not establish that pneumoconiosis caused Green's total disability.
 
 
 17
 On appeal from the administrative law judge's award, the Benefits Review Board in a brief opinion affirmed, finding that the administrative law judge's decision was supported by substantial evidence and consistent with applicable law. Tennessee Consolidated now appeals to this Court, claiming that Dr. Soteres' opinion is not a sufficiently reasoned opinion as required by 718.202(a)(4) and 718.204(c)(4). Tennessee Consolidated's remedial suggestion is that we reverse the award of benefits on the ground that Green has failed to establish the elements of his claim for benefits under the Act.
 
 
 18
 The Department of Labor agrees with Tennessee Consolidated that Dr. Soteres' report will not support the award of benefits in this case, but argues that this Court should remand this case for a new hearing. For the following reasons, we agree with the Department of Labor that the appropriate course in this case is to remand in order to allow the Department to perform its statutory and regulatory duty to provide medical evidence sufficient for a "complete adjudication of the claim." 20 C.F.R. § 718.401.
 
 
 19
 In such a case as this, in which the only medical evidence of record is that provided by the Department pursuant to its statutory and regulatory duties, a reversal on the ground that the claimant has not satisfied his burden of proof would run counter to the intent of the regulations. The purpose of requiring the Department to assist in the miner's claim is to ensure that worthy claimants receive benefits and to relieve at least a portion of the cost of pursuing a claim. If we were to reverse awards of claims where the Department has failed to provide sufficient medical evidence under § 718.401 and 30 U.S.C. 923(b), claimants would be forced to employ their own physicians to buttress the Department's medical evidence to ensure against reversal, even in cases in which the Department's evidence appears to provide a basis for a successful claim. This result would run counter to the purposes of Department-provided medical assistance as set forth in the regulations. Accordingly, remand is the appropriate remedy here, in order to allow the Department to satisfy its duty to provide sufficient medical evidence.
 
 
 20
 Turning to the merits of Tennessee Consolidated's appeal, we note that our review of a decision of the Benefits Review Board is limited. We review a Board's decision for errors of law and for its faithfulness to its own deferential review of the administrative law judge's factual findings. Director, Office of Workers' Compensation Programs v. Rowe, 710 F.2d 251, 254 (6th Cir.1983) (citations omitted). The Board's statutory standard of review is limited to examining the administrative law judge's legal conclusions for error and determining whether the administrative law judge's factual findings are supported by substantial evidence. Id. Notwithstanding our deferential standard of review, we believe the Board erred in refusing to remand this case for an elaboration of the reasons underlying Dr. Soteres' medical conclusions.
 
 
 21
 First, it is unclear whether and to what extent Dr. Soteres' relied on his x-ray finding of borderline pneumoconiosis in concluding that Green suffered from the disease. That x-ray was later read as negative by a more qualified reader. Although Dr. Soteres listed several other factors in reaching his conclusion, including Green's many years of coal mine employment and his history of smoking, he did not articulate the basis for his diagnosis of pneumoconiosis. It may be that his incorrect reading of the x-ray was the driving force behind his medical conclusions, and we believe that the Board erred in dismissing the significance of this fact. Dr. Soteres' failure to explain whether he relied significantly on his positive x-ray reading in reaching his medical conclusions renders the report insufficient as a "reasoned" medical judgment under § 718.202(a)(4).
 
 
 22
 Finally, we note that, prior to his application for benefits, Green was already disabled due to a back injury. Tennessee Consolidated, relying on several cases from the Seventh Circuit, claims that this pre-existing disability forecloses Green's claim here. However, we have already held that "if pneumoconiosis at least partially contributes to his total disability, [a claimant] is entitled to recover benefits." Youghiogheny & Ohio Coal Co. v. McAngues, 996 F.2d 130, 134 (6th Cir.1993) (allowing recovery to a claimant previously totally disabled due to automobile accident), cert. denied, 114 S.Ct. 683 (1994). Therefore, we reject this argument.
 
 
 23
 Because we hold that a further medical evaluation is needed, we REMAND this case in order to allow the Department of Labor to satisfy its statutory and regulatory duty to provide Green with credible medical evidence sufficient for a complete adjudication of his claim.
 
 
 
 [1]
 A B-reader is an individual specially qualified to diagnose x-ray results. B-reader opinions commonly are given more weight than those of a physician with no special qualifications in x-ray diagnosis