983 F.2d 1068
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Earl SLUSHER, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, Respondent.
 No. 92-3237.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1992.
 
 Before KEITH, RYAN and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Petitioner appeals the decision of the Benefits Review Board denying his application for benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-945 et seq. (1988). For the reasons stated below, we REVERSE and REMAND the decision of the Benefits Review Board.
 
 I.
 
 2
 Slusher was employed with the Harlin Wallins Coal Company (Wallins Coal). According to his testimony, Slusher began working at Wallins Coal in 1941 or 1942, served in the Army from 1944-1946, and then resumed work at Wallins Coal, where he remained until 1952 or 1953. Slusher submitted a number of affidavits from former co-workers and family members regarding the dates of his employment with Wallins Coal. The affidavits of William Middlets, Hoover Gilbert, Charley Birkhart, Grant Slusher and Lee Osborne state that Slusher worked at Wallins Coal from 1942 until 1953. However, the affidavits from Eugene Knuckles, Millard Huff, Grant Slusher and Preston Bryant conflict as to the dates of Slusher's employment. Slusher's Social Security earnings records indicate that Slusher worked in coal mine employment for four years and three months.
 
 
 3
 The medical evidence presented at the hearing before the ALJ consisted of x-ray readings, pulmonary function studies, arterial blood gas studies, and physicians' examinations. There were eight readings of four different x-rays. The first x-ray was read as positive for pneumoconiosis by Dr. Bassali and as negative by Dr. Sargent. The second x-ray was read by Drs. Hryhorczuk and Sargent. According to Dr. Hryhorczuk, the x-ray indicated that Slusher had a "normal" chest. Dr. Sargent read the x-ray as negative for pneumoconiosis. The third x-ray was read as negative for pneumoconiosis by Drs. Gordonson and Fitzpatrick. The fourth x-ray was found unreadable by Dr. Sargent, and as negative for pneumoconiosis by Dr. Patel. The three pulmonary function studies and four arterial blood gas studies did not produce qualifying values. Dr. Hryhorczuk diagnosed Slusher with chronic bronchitis and possible pneumoconiosis due to coal mine dust exposure, both of which contributed to his respiratory impairment. Dr. Hyrhorczuk also stated that Slusher would not be able to perform his usual coal mine employment. Dr. Forst diagnosed chronic bronchitis and probable pneumoconiosis, related to dust exposure in Slusher's coal mine employment. Dr. Kamen diagnosed minimal chronic obstructive pulmonary emphysema with mild fibrosis, and indicated that it was probably not related to Slusher's coal mine employment.
 
 
 4
 From January 1977, through August 10, 1987, Earl Slusher filed four applications for benefits under the Black Lung Benefits Act. All four claims were denied by the Department of Labor. On December 1, 1987, Slusher requested a formal hearing before the Office of Administrative Law Judges. On January 23, 1990, Administrative Law Judge Daniel Stewart ("the ALJ") held a hearing. On April 10, 1990, the ALJ issued a decision and order in which he denied benefits to Slusher. Slusher appealed the decision to the Benefits Review Board, which affirmed the decision of the ALJ. Slusher filed a petition for review which was docketed by this Court on March 10, 1992.
 
 
 5
 In the ALJ's decision, he first addressed the length of Slusher's coal mine employment, noting that there were inconsistencies among the various pieces of oral and documentary evidence. The evidence included affidavits from Slusher's co-workers and family members, employment history forms completed by Slusher, Slusher's own testimony, and Slusher's Social Security earnings statement. Because of the inconsistencies, the ALJ concluded that he would rely solely upon Slusher's Social Security earnings statement. Accordingly, the ALJ credited Slusher with four years and three months of coal mine employment.
 
 
 6
 Second, the ALJ analyzed the medical evidence to determine whether Slusher demonstrated a material change in his condition since the Department of Labor's denial of his original claim, pursuant to Section 725.309(d). He also analyzed the record to determine whether Slusher suffered from pneumoconiosis from his work as a coal miner pursuant to Sections 718.202-718.204. The ALJ concluded that neither the x-ray evidence nor the biopsy evidence established a finding of pneumoconiosis under 20 C.F.R. § 718.202(a)(1) or 20 C.F.R. § 718.202(a)(2), respectively. In addition, the ALJ concluded that the opinions of the various physicians did not establish a finding of pneumoconiosis under 20 C.F.R. § 718.202(a)(4). The ALJ discredited the opinions of Drs. Forst and Hryhorczuk because both physicians relied on Slusher having more than twice the amount of coal mine employment than the ALJ found. The ALJ concluded that even if Slusher did have pneumoconiosis, the evidence did not establish that it was a result of his coal mine employment.
 
 
 7
 Next, the ALJ determined that the medical evidence presented did not show that Slusher suffered from a totally disabling respiratory impairment. The ALJ concluded that the opinions of the physicians did not establish total respiratory disability under section 718.204(c)(4). The ALJ stated that in 1977, Dr. Kamen found Slusher capable of performing his employment in the coal mine, and in 1987, Dr. Forst did not make a determination as to total disability. Furthermore, although Dr. Hryhorczuk found that Slusher suffered from total respiratory disability, his opinion was inconsistent with the pulmonary function studies and arterial blood gas studies in the record which were non-qualifying, as well as Slusher's chest x-ray which was negative. The ALJ then denied benefits to Slusher, concluding that Slusher had not established a material change in his condition.
 
 
 8
 In its review of the ALJ's opinion, the Board found that the ALJ erred in its decision that Slusher had not established a material change in his condition pursuant to 20 C.F.R. § 725.309(d), but that the error was harmless. Although both the Director of the Office of Workers' Compensation Programs, United States Department of Labor ("the Director") and Slusher contend that the ALJ improperly relied upon the Social Security earnings records over the remaining evidence, the Board affirmed the ALJ's conclusions because of the discrepancies in Slusher's evidence. Furthermore, the Board affirmed the ALJ's decision to disregard the opinions of Drs. Forst and Hryhorczuk because, according to the ALJ, each physician was mistaken as to the length of Slusher's coal mine employment. Finally, the Board concluded that the ALJ's decision not to consider the lay evidence regarding the issue of total disability was harmless, because the ALJ concluded that the medical opinions did not support a finding of total disability. Accordingly, the Board affirmed the ALJ's decision to deny benefits to Slusher.
 
 II.
 
 9
 This Court's standard of review of the Benefits Review Board's decision is very narrow. Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990). The Benefits Review Board must sustain the ALJ's findings of facts, if those findings are supported by substantial evidence in the record considered as a whole. See Quarto Mining, 901 F.2d at 536 (citing Pyro Mining Co. v. Slaton, 879 F.2d 187 (6th Cir.1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ramsey v. Kentland-Eikhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985). This Court's role is limited to scrutinizing the Board's application of the substantial evidence standard, and correcting any errors of law.
 
 A.
 
 10
 According to the Administrative Procedure Act, (APA) 5 U.S.C. § 557(c)(3)(A), and the Department of Labor Regulations, 20 C.F.R. § 725.477(b), an ALJ's decision must be accompanied by a statement containing the basis of the order, the findings of fact, and the conclusions of law. With regard to applications for Black Lung Benefits, an ALJ must clearly state the reasoning behind his decision. For example, in Peabody Coal v. Hale, 771 F.2d 246 (7th Cir.1985), the court remanded the case to the ALJ for further explication of his decision because there was conflicting evidence. The court noted that the area of Black Lung Benefits is "highly technical and factually bound," necessitating clear statements of reasoning in order for informed appellate review to take place. See also, Director, OWCP v. Congleton, 743 F.2d 428, 429-30 (6th Cir.1984) (ALJ erred in failing to state its rationale for validating certain testimony over contradictory evidence).
 
 
 11
 An ALJ must give its reasoning in assessing the length of coal mine employment. Maxey v. Califano, 598 F.2d 874, 876 (4th Cir.1979). The length of employment is vital because its determination dictates, among other things, what medical evidence will be evaluated. In this case, the ALJ assessed Slusher's testimony, the affidavits of family members and co-workers, Slusher's social security earnings records, and the Department of Labor employment history forms. The ALJ rejected Slusher's testimony and affidavits, and relied upon the Social Security earnings records to calculate the length of Slusher's coal mine employment.
 
 
 12
 The ALJ's consideration of the Social Security earning records was appropriate. Trusty v. Director, OWCP, 2 Black Lung Rep. 1-582 (1979), aff'd No. 81-3718, slip. op. (6th Cir. March 15, 1983); Farris v. Director, OWCP, 1 Black Lung Rep. 1-800 (1978). However, according to 20 C.F.R. § 718.301(a), evidence of employment may also be established through the claimant's own testimony as well as the testimony of other witnesses. For example, in Niccoli v. Director, OWCP, 6 Black Lung Rep. 1-910 (1984), the ALJ credited the claimant with ten years of coal mine employment based upon the testimony of the claimant's widow and friend, although the Social Security earning records were incomplete. In Trusty, 2 Black Lung Rep. 1-582, (1979), the ALJ credited the claimant with four years of coal mine employment based upon the affidavit of a co-worker, even though the Social Security earning records only showed 1.5 years of employment.
 
 
 13
 In fact, this Court held in Ferrell v. Director, OWCP, No. 84-3572, (6th Cir. Sept. 17, 1985) (unpublished per curiam) that it is unreasonable for an ALJ to completely discount an appellant's testimony and affidavits of his co-workers in light of contradictory evidence from Social Security records when assessing the term of coal mine employment. In Ferrell, the ALJ denied benefits to the claimant because the Social Security records indicated that the claimant did not have ten years of coal mine employment necessary to invoke the presumption of pneumoconiosis under 20 C.F.R. § 727.203(a). This Court found that there was substantial evidence in the testimony of the claimant and co-workers that the claimant worked at least ten years in the coal mines. Accordingly, this Court remanded the case to the Director for further proceedings.
 
 
 14
 In this case, although it was within the discretion of the ALJ to accord the Social Security records more weight than the testimony and affidavits, the ALJ was required to provide some rationale for its decision to do so. Congleton, 743 F.2d at 429. Instead, the ALJ simply stated:
 
 
 15
 Due to the discrepancy between Claimant's statements, the affidavits, and Claimant's Social Security earnings statement, I give more weight to his Social Security earnings statement.
 
 
 16
 (Board Decision at 4, quoting ALJ Decision and Order at 6). The ALJ should have explained his reasons for finding the Social Security records more reliable.
 
 
 17
 In its decision, the Board stated that Slusher's testimony and affidavits were "unclear or unreasoned testimony." This factual conclusion was improperly made by the Board because its role was limited to determining whether the ALJ's decision was supported by substantial evidence. The Board gave an explanation for the ALJ's reliance on the Social Security records that was not put forth by the ALJ. However, the Board cannot substitute its reasoning to fill a void in the opinion of the ALJ.
 
 
 18
 The ALJ erred by failing to provide his reasons for discrediting the testimony of Slusher and the affidavits of Slusher's relatives and co-workers. Accordingly, the case should be remanded to the ALJ to identify his reasons for finding the Social Security earning records more reliable than the other evidence presented by Slusher.
 
 B.
 
 19
 The ALJ also stated that he rejected the testimony of Drs. Hryhorczuk and Forst because they both mistakenly "relied on more than twice as much coal mine employment as Claimant actually had." Both physicians diagnosed Slusher under the assumption that he was employed for approximately ten years.
 
 
 20
 It is within an ALJ's discretion to disregard the opinion of a physician who incorrectly assesses the length of the miner's coal mine employment. Creech v. Benefits Review Board, 841 F.2d 706, 709 (6th Cir.1988). However, in this case, the ALJ may have erred in his calculation of the length of Slusher's coal mine employment, which consequently may have hampered his analysis of the medical evidence.
 
 
 21
 Although the Director argues that the ALJ may have erred in rejecting Drs. Hryhorczuk's and Forst's opinions on the basis of a mistaken calculation as to the length of Slusher's coal mine employment, the Director, nevertheless, maintains that the ALJ properly rejected Dr. Forst's opinion on the basis of her mistaken belief regarding Slusher's history of smoking. It is impossible, however, to determine the extent to which the ALJ may have viewed Dr. Forst's opinion differently had he not rejected it wholesale. Therefore, we cannot say that the possible error is harmless.
 
 
 22
 If the ALJ determines on remand that the evidence does not establish additional years of coal mine employment, he may again choose to reject the opinions of Drs. Hryhorczuk and Forst. However, if he determines that the physicians were correct in their assumption of the length of the coal mine employment, he must then credit their opinions in his analysis of whether Slusher suffered a material change in condition due to pneumoconiosis.
 
 C.
 
 23
 The ALJ also erred in rejecting Dr. Hryhorczuk's opinion on the basis of the "non-qualifying" values obtained from the pulmonary function studies and the arterial blood gas studies.[1] If a physician evaluates the "non-qualifying" objective tests and nevertheless finds a respiratory impairment, the ALJ cannot substitute his opinion for that of the physician's and determine that the "non-qualifying" objective tests automatically mean that no respiratory impairment exists. Walker v. Director, OWCP, 927 F.2d 181, 184 n. 4 (4th Cir.1991); Gober v. Matthews, 574 F.2d 772, (3d. Cir.1978).
 
 
 24
 In addition, the ALJ erred in failing to acknowledge that Dr. Forst made a determination as to total disability. In fact, Dr. Forst did make an assessment of total disability, reflecting statements Slusher made to her. Dr. Forst's opinion is important because it may be consistent with Dr. Hryhorczuk's opinion regarding Slusher's total disability.
 
 III.
 
 25
 Accordingly, we REVERSE and REMAND this case to the ALJ, to provide a rationale for his decision to rely solely upon Slusher's Social Security earning records to determine the length of Slusher's coal mine employment. If the ALJ finds that Slusher's coal mine employment is commensurate with the amount of time relied upon by Drs. Hryhorczuk and Forst, he should then consider their reports in determining whether Slusher established a material change in condition.
 
 
 26
 Mr. Slusher filed his first application for Black Lung Benefits under the Act approximately fourteen years ago. He is now 66 years of age. If Mr. Slusher is eligible for these benefits, it is vital that he receive them as soon as possible. Therefore, we ask that the ALJ resolve this case as expeditiously as possible.
 
 
 
 [1]
 "Qualifying" pulmonary function studies and arterial blood gas studies are those which meet the prescribed regulatory criteria for establishing presumptive total respiratory disability set forth at 20 C.F.R. § 718.204(c)(2) and Appendix C. See Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 144 n. 14 (1987)