Lawrence J. RAY, Petitioner,

v.

BRUSHY CREEK TRUCKING COM-
PANY, INC.; the Travelers Insurance
Company; Director, Office of Work-
ers' Compensation Programs, United
States Department of Labor, Respon-
dents.

No. 01–3158.

United States Court of Appeals,
Sixth Circuit.

July 15, 2002.

Before: RYAN, BOGGS, and COLE,
Circuit Judges.

RYAN, Circuit Judge.

The petitioner, Lawrence J. Ray, ap-
peals the Benefits Review Board's affir-
mance of the administrative law judge's
(ALJ) denial of black lung benefits on his
duplicate claim filed pursuant to Title IV
of the Federal Coal Mine Health and Safe-
ty Act of 1969, *as amended*, 30 U.S.C.
§§ 901–945 (the Act). The questions pre-
sented are whether substantial evidence
supports the ALJ's conclusions: (1) that
Ray's work at Mid–America Transporta-
tion Company (Mid–America) does not
qualify as coal mine employment under the
Act; and (2) that the medical opinions of
Dr. Rachel Rubin and Dr. Anne Krantz
can properly be discounted. For the fol-
lowing reasons, we **AFFIRM** the Board's
decision.

## I.

Because the facts are known to the parties and are largely undisputed, we offer only an abbreviated summary of the relevant facts underlying Ray's claim. Ray worked from 1966–1972 for Mid–America as a deckhand, tying together barges, and cleaning excess coal spillage from the barges. Mid–America operated river barges that would pick up coal in St. Louis, Missouri, and bring it to power plants located in St. Paul, Minnesota. The coal was brought by train from the coal mines to the transfer stations where it was placed on conveyors and loaded onto the barges on which Ray worked. Ray alleges that during the transfer process he was exposed to a significant amount of coal dust.

From 1976–1982, Ray intermittently worked for the Brushy Creek Trucking Company a total of four and one-quarter years. While employed at Brushy Creek, Ray drove a truck loaded with unprocessed coal from coal mines to tipples and from coal mines to processing plants. Following his employment with Brushy Creek, Ray worked for three and one-quarter years for other trucking companies doing similar work, and he was self-employed.

Ray filed an initial claim for black lung benefits on November 7, 1988. On April 26, 1989, the Office of Workers' Compensation (OWCP) denied Ray's claim because he had not established that he was "totally disabled by pneumoconiosis (Black Lung disease) caused at least in part by [his] coal mine work." When Ray did not appeal the decision, this determination became final.

Ray filed the present, "duplicate" claim on August 5, 1994, which the OWCP denied. Ray appealed, and the case was forwarded to ALJ Rudolf L. Jansen, who remanded the matter to the District Director for a determination of the "responsible operator." The District Director eventually named Brushy Creek as the only responsible operator. The case was then sent to the Office of Administrative Law Judges for a formal hearing, which was held on August 4, 1999. The ALJ concluded that the newly submitted evidence was not sufficient to establish the existence of pneumoconiosis pursuant to 20 C.F.R. § 718.202(a), and total respiratory disability due to pneumoconiosis pursuant to 20 C.F.R. § 718.204(b), (c), and therefore insufficient to establish a material change in condition under 20 C.F.R. § 725.309(d).

Ray appealed this denial to the Benefits Review Board. The Board affirmed the ALJ's decision and order denying benefits. Ray filed this timely appeal pursuant to 33 U.S.C. § 921(c) as incorporated by 30 U.S.C. § 932(a).

## II.

When reviewing a claim for black lung benefits, a reviewing court must affirm the Board's decision if the Board has not committed legal error or exceeded its statutory scope when reviewing the ALJ's factual determinations. *Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532, 536 (6th Cir.1990). Therefore, our review is narrow, and is limited to whether the ALJ's decision is supported by substantial evidence and is in accordance with the applicable law. *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 575 (6th Cir.2000). We may not disturb an ALJ's conclusions that are supported by substantial evidence, "even if the facts permit an alternative conclusion." *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir.1995). Substantial evidence is evidence that a reasonable person would accept as adequate to support the conclusion reached. *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 488 (6th Cir.1985).

## A.

### Coal Mine Employment

Ray contends that substantial evidence does not support the ALJ's conclusion that Ray's six years at Mid–America does not qualify as coal mine employment under 20 C.F.R. § 725.202(a). We agree that this determination is important for two primary reasons: First, if Ray can show that he has ten years of qualifying coal mine employment, he is entitled to the statutory presumption that the existence of any pneumoconiosis arose out of that employment (20 C.F.R. § 718.203(b)); and second, because the length of coal mine employment has the potential to affect medical opinions regarding causation. The ALJ credited Ray with seven and one-half years of qualifying coal mine employment for Ray's work at Brushy Creek and with L.J. Ray Trucking Company.

The statute defines a miner, or coal miner as:

... [A]ny individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or *preparation of coal.* Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to coal dust as a result of such employment.

30 U.S.C. § 902(d); *see* 20 C.F.R. § 725.101(a)(19) (emphasis added). The work of preparing coal for purposes of the Act is defined as "the breaking, crushing, sizing, cleaning, washing, drying, mixing, storing, and loading of bituminous coal, lignite, or anthracite, and such other work of preparing such coal as is usually done by the operator of the coal mine." 30 U.S.C. § 802(i); *see* 20 C.F.R. § 725.101(a)(13).

█ To be entitled to benefits under the Act, a claimant must establish that: (1) he worked in or around a statutorily defined coal mine (the "situs" requirement); and (2) his duties involved the extraction or preparation of coal, or involvement in appropriate coal mine construction or transportation (the "function" requirement). 30 U.S.C. §§ 802(g), (h); *Falcon Coal Co. v. Clemons,* 873 F.2d 916, 921 (6th Cir.1989). Ray contests the ALJ's determination that his work at Mid–America does not meet the "function" requirement. Specifically Ray contends that his work at Mid–America is within the statutory definition of the "work of preparing coal," because he loaded what he alleges to be "unprocessed" or unwashed coal onto barges for delivery to the ultimate consumer. The ALJ concluded:

I find that the Claimant's responsibilities with Mid–America did not constitute coal mine employment. His duties did not involve the extraction or preparation of unprocessed coal prior to its introduction into the stream of commerce. Rather, the Claimant's minimal exposure to coal dust occurred while he was working on a barge that transported coal from the processing plants to power companies. As such, the Claimant's work was ancillary to the delivery and commercial use of processed coal and does not qualify as coal mine employment.

This court has established some precedent as to what constitutes the preparation of coal to meet the "function" requirement. In *Southard v. Director, OWCP,* 732 F.2d 66, 69–70 (6th Cir.1984), we held that working with processed coal already in the stream of commerce does not satisfy the function requirement. Answering the question, "at what point the 'preparation' of coal ends and the entry of coal into the stream of commerce begins," this court held in *Ratliff v. Chessie System R.R.,* No. 93–3535, 1994 WL 376891 (6th Cir. July 18, 1994) (unpublished disposition), that "the final step of processing the coal (or 'prepa-

ration') ended when the coal was loaded into the railroad cars at the tipple; after that, the coal entered the stream of commerce and was no longer being 'prepared.'" *Id.* at *3. Ray directs our attention to *Hanna v. Director, OWCP,* 860 F.2d 88 (3d Cir.1988), where the Third Circuit held that loading *processed* coal from a processing tipple onto a barge was a necessary step in the preparation of the coal for entry into the stream of commerce, and thus, the claimant satisfied the "function" element of the definition of miner and was entitled to benefits. *Id.* at 93.

We hold that Congress did not intend to extend benefits under the Act to a claimant with Ray's work history at Mid–America. Unlike the successful claimants in *Ratliff* or *Hanna,* Ray worked on a barge located at a distance from the coal mine and/or tipple site. In his affidavit, Ray explained that the coal was brought by train from the coal mines to transfer stations where it was placed on conveyors and loaded onto the barges on which Ray worked. Although there is some question regarding whether the coal was "processed," the fact that the coal had been crushed by the time it reached the barge convinces us that the coal was processed in at least some respect. Despite this potential question regarding the character of the coal, we do not think that Congress intended to extend benefits to a claimant whose employment does not have a stronger connection "in or around a coal mine," as required by the statute. Although we do not wish to establish a firm line where the preparation of coal ends and the entry into the stream of commerce begins (*e.g.,* at the tipple), we hold under the facts of this case that substantial evidence supports the ALJ's conclusion that Ray's work at Mid–America did not involve the extraction or preparation of coal or involvement in appropriate coal mine construction or transportation, but, instead, "was ancillary to the delivery and commercial use of processed coal."

## B.

### Discounted Medical Opinions

Ray next contends that the ALJ improperly discounted the newly submitted medical opinions of Dr. Rachel Rubin and Dr. Anne Krantz, both of whom concluded that Ray had established the necessary elements of entitlement under 20 C.F.R. pt. 718:(1) the existence of pneumoconiosis; (2) pneumoconiosis arising from coal mine employment; (3) total disability; and (4) total disability due to pneumoconiosis. *See Adams v. Director, OWCP,* 886 F.2d 818, 820 (6th Cir.1989). Brushy Creek contends that the ALJ properly discounted the medical opinions of Drs. Krantz and Rubin because they are internally inconsistent, rely on contradictory employment histories, and ignore objective medical evidence.

In *Sharondale Corp. v. Ross,* 42 F.3d 993 (6th Cir.1994), this court enunciated the following standard for reviewing whether a claimant filing a duplicate claim has established a material change in condition, thereby entitling the claimant to a full record review:

> [T]o assess whether a material change is established, the ALJ must consider all of the new evidence, favorable and unfavorable, and determine whether the miner has proven at least one of the elements of entitlement previously adjudicated against him. If the miner establishes the existence of that element, he has demonstrated, as a matter of law, a material change. Then the ALJ must consider whether all of the record evidence, including that submitted with the previous claims, supports a finding of entitlement to benefits.

*Id.* at 997–98.

The ALJ noted that in the previous denial of Ray's claim, the District Director

determined that Ray failed to establish the existence of pneumoconiosis pursuant to 20 C.F.R. § 718.202(a), and total respiratory disability due to pneumoconiosis pursuant to 20 C.F.R. § 718.204(b), (c). The ALJ first reviewed whether Ray's new evidence established the existence of pneumoconiosis. *See* 20 C.F.R. § 718.202(a)(1)-(4).

A claimant may establish the existence of "legal" pneumoconiosis by four methods: (1) x-ray; (2) biopsy or autopsy; (3) regulatory presumption; and (4) reasoned medical opinion. *Id.* Ray specifically challenges the ALJ's conclusion that Ray did not establish the threshold element of pneumoconiosis under 20 C.F.R. § 718.202(a)(4). That regulation states:

A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electro-cardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

20 C.F.R. § 718.202(a)(4). When weighing medical opinions, the ALJ may appropriately consider various factors, including: the length of time a physician has treated the miner; the experience and credentials of the physician; the recency of the medical report; and whether the report is adequately documented and based on accurate data. *See Gray v. SLC Coal Co.,* 176 F.3d 382, 388 (6th Cir.1999). This court defers to the ALJ's determinations of credibility and resolutions of inconsistencies in testimony, as well as the weight given to medical opinions that are supported by substantial evidence. *Consolidation Coal Co. v. Worrell,* 27 F.3d 227, 231 (6th Cir.1994);

*Tennessee Consol. Coal Co. v. Crisp,* 866 F.2d 179, 185 (6th Cir.1989); *Riley v. Nat'l Mines Corp.,* 852 F.2d 197, 198 (6th Cir. 1988). The determination of whether a medical opinion is well-reasoned is ordinarily left to the trier of fact. *Director, OWCP v. Rowe,* 710 F.2d 251, 255 (6th Cir.1983).

We conclude that the ALJ's determinations in this case are supported by substantial evidence in the record and, therefore, we will not disturb his conclusion that Ray failed to establish the existence of pneumoconiosis under § 718.202(a)(4).

**1.**

**Dr. Rubin**

■ With respect to Dr. Rubin, the ALJ concluded:

Dr. Rubin issued a report which diagnosed the Claimant with Coal Miner's Pneumoconiosis as evidenced by chest films and restrictive defect with diffusion impairment on PFT's.[ ] However, as stated above, the single November 4, 1994 x-ray offered into evidence was interpreted as negative by two B readers, and a third physician did not give a positive reading. Dr. Rubin is not a B reader, and to the extent that her finding of pneumoconiosis is based on an x-ray which was interpreted as negative by physicians who are B readers, I give her opinion little weight.

We have previously held that it is within the province of the ALJ to accord greater weight to readings made by B readers and/or board-certified radiologists. *Staton v. Norfolk & W. Ry. Co.,* 65 F.3d 55, 59 (6th Cir.1995); *Back v. Director, OWCP,* 796 F.2d 169, 172 (6th Cir.1986); *Orange v. Island Creek Coal Co.,* 786 F.2d 724, 727 (6th Cir.1986). Moreover, the ALJ discounted Dr. Rubin's medical opinion because it was based, in part, on Ray's em-

**664**

ployment at Mid–America ("the etiology of the patient's Coal Worker's Pneumoconiosis is his 18 years of significant coal dust exposure...."). As we have noted, Ray's work at Mid–America does not qualify as coal mine employment, and it is within the discretion of the ALJ to discount the opinion of a physician who incorrectly assesses the length of coal mine employment. *Slusher v. Director, OWCP*, No. 92–3237, 1992 WL 393147, at *4 (6th Cir. Dec. 28, 1992) (unpublished disposition). Moreover, we agree that the ALJ properly discounted Dr. Rubin's opinion because she relied on an erroneous smoking history. *See Bobick v. Saginaw Mining Co.*, 13 B.L.R. 1–52 (1988); *Rickey v. Director, OWCP*, 7 B.L.R. 1–106 (1984). For all of these reasons we believe that substantial evidence supports the ALJ's decision to discount Dr. Rubin's opinion.

### 2.

### Dr. Krantz

Similarly, the ALJ discounted the opinion of Dr. Krantz, in part, because Dr. Krantz relied on a coal mine employment history that is not clearly supported by the record (relating to Ray's work at Mid–America, Dr. Krantz relied on "significant exposure to unprocessed coal."). Our decision in *Slusher*, as noted above, enables the ALJ to properly discount Dr. Krantz's opinion on this basis. *Slusher*, 1992 WL 393147, at *4. Moreover, because we find that the ALJ in this instance carefully reviewed all of the evidence, including the medical opinion submitted by Dr. Krantz, we must defer to the ALJ's assessments of credibility and resolutions of inconsistency. *Worrell*, 27 F.3d at 231.

### III.

We conclude that substantial evidence supports the ALJ's determination that Ray's work at Mid–America was not qualifying coal mine employment under the Act. Furthermore, we conclude that substantial

evidence supports the ALJ's decision to discount the newly submitted medical opinions of Drs. Rubin and Krantz. Because Ray was not able to establish the existence of pneumoconiosis pursuant to 20 C.F.R. § 718.202(a), we need not consider whether substantial evidence supports the ALJ's conclusions regarding whether the newly submitted evidence establishes a total respiratory disability due to pneumoconiosis pursuant to 20 C.F.R. § 718.204(b), (c). Accordingly, we **AFFIRM** the Board's decision denying benefits.